294 So.2d 371 (1974)
Bobby Lee LAWRENCE, Appellant,
v.
STATE of Florida, Appellee.
No. T-123.
District Court of Appeal of Florida, First District.
May 16, 1974.
Richard W. Ervin, III, Public Defender, and David J. Busch, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and George R. Georgieff, Asst. Atty., Gen., for appellee.
RAWLS, Chief Judge.
Appellant-defendant Lawrence appeals a conviction of second degree murder. The salient point on appeal urged by appellant is that the trial court erred in admitting hearsay testimony on the ground that defendant was present when the conversation took place.
The homicide involved in this cause resulted from a heated conversation that took place in a restaurant tavern located on the waterfront in Duval County, Florida. Anne Christie Walker was killed during the course of the conversation between the group hereafter identified. Testimony was adduced that defendant fired the first shot. Anne pulled her pistol and fired back and defendant then shot her three times. The episode might well be termed a "family affair". Charles Dorsey, owner and captain of the shrimp boat, Christopher; Walter Walker; and appellant, Bobby Lee Lawrence, the crew members of the Christopher were congregated in the restaurant. Others present were Walker's wife, Anne Christie Walker (the decedent), and Joseph (Jody) Johnson, nephew of Charles Dorsey. The testimony reveals that the affray that culminated in the death of Anne Christie Walker arose when the defendant, Dorsey, Johnson, and Walker were standing in a group at which time a conversation ensued between Johnson and Walker. Over appellant's objection on the grounds of hearsay, Walker testified on behalf of the state as follows:
"Q. Where was the defendant when this was taking place?
"A. Standing beside him. Standing beside Joseph Johnson.
"Q. Was he doing anything?
"A. No. He was standing, more or less, in this position.
"Q. Okay. And what did Joseph Johnson ask you?
"A. Asked me if I had told anybody that he was responsible for fouling or tampering with rigging on another boat.
"Q. And what did you say?
"A. I said no, I had not.
"Q. Was that a truthful answer?
"A. Yes, it was. And Bobby Lawrence then interceded and said, `What did you tell me on the boat last week?'
"Q. Is everybody still standing in the same places?
"A. Yes, sir.

*372 "Q. Okay.
"A. And it registered then to me what he was referring to, and I told him, I said a conversation came up that there was a feud or some disorder between Joe Johnson and a Captain A.J. on another boat, and neither Bobby Lawrence, myself nor Charles Dorsey knew what it was about. We were trying to  we were looking for a reason for why they would be arguing or have a feud going or a disagreement about anything. And I don't remember who said it; I believe it was Mr. Lawrence that said Jody might have had something to do with it. Myself, I said I doubt it; I don't see why Jody would have anything to do with anybody else's boat because he's not that kind of a man as far as I know, and I've know him for quite some time. I don't think that would be the basis of their argument.
* * * * * *
"A. I said, `Now, if anybody else has told you anything different, son, they've told you a damn lie.'
"Q. Who were you talking to?
"A. I was talking to Joseph Johnson.
"Q. Where was Bobby Lawrence at this time?
"A. He was standing beside Joseph Johnson.
* * * * * *
"Q. All right, what happened then?
"A. Lawrence shouted my name and said, `Don't call me a liar,' reached across his chest and removed a gun."
The following testimony was adduced from Dorsey:
"Q. Then what happened?
"A. So he [Johnson] walked ahead of me. And in the meantime Mr. and Mrs. Walker was leaving the bar going across the establishment towards table one. Well, when he reached table one he spoke to Walker. He said, `I'd like to talk to you, Walter.'
And Walter says, `Okay, Jody.'
So then they came up to the end of the bar. I proceeded on, joined them. And Walker leaned on the forward end of the bar, Jody near the curvature. So, he says, `Did you tell anybody that I twisted A.J.'s nets?'
And Walker said, `No, Jody, I didn't tell anybody anything like that.'
He said, `Well, I understand you did.'
He said, `No, Jody, I didn't tell anybody anything like that.'
So, in the meantime, Mr. Lawrence was right in the middle, see. So, he heard this and he said, `What was that in the pilot house of the Christopher going over the bar?'
"Q. Who said that, now, Mr. Dorsey?
"A. Mr. Lawrence did.
"Q. He was addressing that question to who?
"A. To Walker.
"Q. Okay. And what was Walker's answer?
"A. So then Walker said, `Oh, yes,' he said, `I did say when you told me, Lawrence, that you figured Jody might have twisted A.J.'s nets, so I said, no, I don't think one shrimp boat Captain would do that to another one.' And he turned to Jody then and says, `Now, anybody that told you that told you a damn lie.' And that's when Mr. Lawrence crisscrossed across his stomach and came up "
Appellant timely objected to the testimony of Dorsey, viz:
"Excuse me, Your Honor, I'm going to object as to this being hearsay. I believe there's a very recent holding that the Duval County hearsay rule as to being in the presence of the defendant is not the law and that rule "
*373 The trial court summarily overruled the objection as it had on the occasion of Walker's.
In Daughtery v. State, 269 So.2d 426 (Fla.App.1st 1972), Judge Spector, speaking for this Court, cremated what was termed during the instant trial as the "Duval County Rule on Hearsay", when he stated as follows:
"It is a frequent abuse of the hearsay rule to allow hearsay testimony on the ground that the defendant was present at the time the statement was made. This hip pocket rule is unsupported by authorities. The misconception stems from confusion with the hearsay exception of admission by silence. The otherwise hearsay statement can only be admitted when it can be shown that in the context in which the statement was made, it was so accusatory in character that the defendant's silence may be inferred to have been assent to its truth."
The state in an all out assault upon the rule as stated in Daughtery does not attempt to distinguish the factual setting, but charges head on with the following argument:
"It is academic to discuss an issue of whether the remarks were hearsay; they were. It was equally academic for this Court in Daughtery to discuss silence in the face of an accusation since they had nothing to do with the case at bar... . Daughtery was wrong when written, is wrong now and will remain wrong until corrected to conform with sound rules of evidence."
The state candidly admits that it "has been unable to find a case decision specifically holding that the presence of the defendant creates an exception to the hearsay exclusion" and then by tortuous reasoning concludes that the law in Florida nonetheless appears to be that it does.
Too often appellate courts are urged and persuaded to cast a particular evidentiary rule into a rigid mold. The state seeks to emerge with the "in defendant's presence" rule, while appellant urges under all factual circumstances that any declaration of a hearsay character in the presence of the defendant is inadmissible unless silence on his part constitutes an admission.[1] We decline to so accommodate either litigant.
Here, as opposed to Daughtery, supra, appellant was clearly a participant in the conversations. He was not a silent third party bystander. The conversation was stimulated by the excitement of the accusation which led to the shooting of decedent. Evidence which is otherwise excluded by the hearsay rule is admissible if it is part of the res gestae. "Res gestae refers to statements made immediately before, or immediately after the commission of a crime, by the accused, victim, or a bystander, as a spontaneous reaction or utterance stimulated by the excitement of the occasion... ."[2] As a participant in the verbal fracas which culminated in the shooting of decedent, appellant is bound by the conversation which, even though hearsay in part, is admissible under the doctrine of res gestae.
Other points posed by appellant are without merit. The judgment appealed is affirmed.
JOHNSON and SPECTOR, JJ., concur.
NOTES
[1] 22A C.J.S. Criminal Law § 746; and V Wigmore, Anglo-American System of Evidence in Trial at Common Law § 1364 (3rd Ed. 1940).
[2] Charles Torcia, Wharton's Criminal Evidence § 297 (13th Ed. 1972) at 60.