315 So.2d 461 (1975)
Charles William PROFFITT, Appellant,
v.
STATE of Florida, Appellee.
No. 45541.
Supreme Court of Florida.
May 28, 1975.
Rehearing Denied August 13, 1975.
*463 James A. Gardner, Public Defender, and Robert T. Benton, II, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for appellee.
PER CURIAM.
This cause is before the Court on direct appeal from the recommendation and sentencing to death of the appellant, Charles William Proffitt, by the Circuit Court of Hillsborough County, Florida. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution.
The appellant was charged by a grand jury indictment with the murder in the first degree of Joel Ronnie Medgebow by stabbing.
The evidence produced at trial established that on the morning of July 10, 1973, at about 4:45 A.M., the decedent's wife, Patricia Kay Medgebow, was awakened, apparently by her husband's moaning. She saw her husband propped up on one elbow with what later was discovered to be a knife in his hand. Suddenly, a man jumped up and struck her in the face several times fleeing through the open sliding glass doors. Fingerprints were later found on the door, however, they did not match the appellant's prints. The decedent's wife gave a description of the assailant but, at trial, she was unable to identify the appellant as the man who struck her on the morning of the homicide. In her description of the assailant, she claimed that he was wearing a white pin-striped shirt and either brown or grey trousers. She stated that on the evening prior to the killing she had shared a marijuana cigarette with four other people.
The testimony of Michael Charles Seary, appellant's coworker, was presented to show that on the night preceding and during the morning prior to the homicide, the appellant and Seary had been out drinking until 3:30 or 3:45 A.M., and that the appellant had driven Seary home, had a brief conversation and left. Seary also stated that at the time, the appellant was wearing a short-sleeved, white Maas Brothers' shirt with a blue oval emblem over the left breast, and grey trousers.
Further testimony revealed that the appellant and his wife lived in a two-bedroom mobile home, renting the other bedroom to a Mrs. Mary Helen Bassett and her infant daughter. Mrs. Bassett testified that on the evening prior to the homicide she had waited up with the appellant's wife for his return until approximately 1:00 A.M., but finally retired prior to his arrival. Over defense counsel's objection, she testified that she was awakened about half past five on the morning of July 10, 1973, and overheard a conversation between the appellant and his wife. She admitted that she did not hear the complete unbroken conversation, hearing only intermittent segments. She stated that she heard the appellant say that he had stabbed and killed a man during an attempted robbery and that he had beaten a woman. Mrs. Bassett also stated that she had not seen the appellant during the conversation but that she had recognized his voice.
Mrs. Proffitt, appellant's wife, testified that on the evening prior to the homicide, her husband had gone to work dressed in a white Maas Brothers' shirt and grey pants and returned from work at about a quarter past five the next morning wearing the same shirt and pants but was at that time barefooted.
A droplet and a smear of human blood were found on the Maas Brothers' shirt, however, the quantity was insufficient to type. The blood found on the knife was shown to be the same type as that of the victim but no fingerprints were detectable.
Upon this evidence, the jury found the defendant guilty as charged. The second half of the bifurcated proceeding was held, at which time it was shown that the appellant had been convicted in 1967 of the *464 crime of breaking and entering without permission. In addition, the evidence adduced at trial was reiterated and the jury then retired to consider the recommendation of sentence. Upon returning, the jury recommended that the death penalty be imposed. The trial judge then ordered a mental examination of the defendant to determine his mental condition then and at the time of the homicide. The examination revealed that at the time of the commission of the homicide, the appellant was not mentally impaired.
The trial judge then sentenced the appellant to death and this appeal ensued.
Appellant has raised eleven points on appeal. Each shall be treated in the order presented. The first two points are devoid of merit. Appellant first contends that the court erred in refusing to allow defense counsel to pursue questions dealing with whether the victim was a dealer in marijuana and whether his death was a result of those dealings. It is clear from reading the record that counsel for the appellant was not attempting to impeach or discredit the witness but rather was taking an expedition into immateriality. The trial judge properly exercised the broad discretion allowed him by limiting the scope of cross-examination. Baisden v. State, 203 So.2d 194 (Fla.App. 1967). There is no need to speculate as to the goal of the expedition, however, it is interesting to note that in viewing the evidence sought to be admitted, the only purpose which its introduction would serve would be the confusion of the ultimate issue and the impairment of the fairness of the trial.
Appellant's second alleged error challenges whether the State may recall a witness after the witness has stepped down. The record reveals that the witness had stepped down but had remained sequestered and had not mingled with the public generally. Further, the information solicited upon recall was not critical to either the State's case or prejudicial to the defendant. If any error has been committed, our review of the record clearly indicates that that error, if any, was harmless and within the purview of the statutes. (Fla. Stat., §§ 59.041 & 924.33, 1974).
Appellant's third and fourth points on appeal relate to the admissibility of the testimony of Mrs. Bassett and the challenged privileged character of the conversation she overheard between the appellant and his wife. Appellant first asserts that the record is devoid of any suggestion that either appellant or his wife had any indication that they were being overheard.
The general rule, and clearly the weight of authority is to the effect that testimony of a third party who overhears a confidential communication is admissible. Wigmore on Evidence, Vol. VIII, § 2336. However, it has long been held in this State that privilege of non-disclosure between husband and wife and attorney and client attaches to the conversation or the communication itself, and protects it from exposure in evidence, wheresoever or in whosesoever hands it may be. Mercer v. State, 40 Fla. 216, 24 So. 154, 158 (1898). In Schetter v. Schetter, 239 So.2d 51 (Fla. App. 1970), an attorney recorded a conversation he had with his client over the telephone, without telling the client until the end of the conversation. The attorney then gave the recording to a psychiatrist who later testified at a hearing which resulted in the appointment of a guardian ad litem for the client.
The thrust of the opinion in Schetter, reversing the admissibility of that testimony is the assertion basic to the attorney-client privilege, that is, that the communication in question must have been made in confidence. Id. at 52.
The question then in this case, however, is whether it can be determined from the record that the appellant and his wife knew or should have known that their privileged communication was being overheard or whether as the appellant asserts, *465 that the record is devoid of any suggestion that the appellant or his wife had any indication that the privileged communication was being overheard. The testimony of the appellant's wife indicates that she was aware of Mrs. Bassett's presence in the trailer on the morning after the homicide. It is equally clear that the appellant knew that she was residing in the same trailer since Mrs. Bassett was paying one hundred dollars a month as rent on the room she and her infant daughter were occupying. Additionally, it is readily apparent from the record that the appellant and his wife were not attempting to keep their voices at an indiscernible level since it was their voices which must have awakened Mrs. Bassett in spite of the fact that her door was closed. The testimony of Mrs. Bassett also shows that after overhearing the conversation between the appellant and his wife, she also observed the appellant get in his car to leave. However, the testimony does not end there. It seems that after the appellant left, Mrs. Bassett emerged from her room and talked with the appellant's wife. Mrs. Proffitt expressed no surprise at seeing Mrs. Bassett nor admonished her not to reveal what she had overheard. Mrs. Proffit clearly knew that Mrs. Bassett had overheard the conversation.
In examining these facts in the light of the pronouncement in Schetter, it is clear that there was no attempt to make the communication in confidence. It was as if Mrs. Bassett, in the other room, was privy to the conversation. There is absolutely no testimony indicating that either the appellant or his wife made any attempt, no matter how little, to keep the conversation from being overheard. It is further clear from the testimony that conversations were readily discernible in other rooms and the appellant either knew or should have known that he was going to be overheard if he was speaking over a whisper. Therefore, the privilege character of the communication was lost when they were speaking in a manner and place where they had a reasonable chance of being overheard, and they knew of that possibility at that time.
Appellant also stated that the admission of Mrs. Bassett's testimony about what was said violates the hearsay rule. Upon close scrutiny, it is noted that the utterances of the appellant and his wife were made within thirty minutes after the commission of the homicide at a time when the appellant was making hasty preparations for leaving the State. It is, therefore, clear that the declaration is sufficiently contemporaneous with the event that it can be regarded as having been stimulated by the event and not by the declarant's deliberation and thus within the res gestae exception. Lawrence v. State, 294 So.2d 371 (Fla.App. 1974); See: Wharton's Criminal Evidence, Vol. 2, § 297. By contrast, where the communication was heard through admitted eavesdropping by use of an extension telephone receiver without knowledge of either of the parties to the conversation, see Horn v. State, 298 So.2d 194 (Fla.App. 1974).
Appellant's fifth point relates to whether the court erred in permitting counsel for the prosecution to comment during closing argument on a possible explanation of the conflicting testimony dealing with the shirt worn by the assailant. This point has no merit since there were clearly facts in evidence tending to show that there was the possibility, however remote, of two different shirts having been involved, and the court correctly exercised its discretion in permitting the comment.
Appellant next raises the question of whether the court erred in instructing the jury on the question of whether guilt could be inferred from flight. The general rule in Florida as correctly pointed out by the appellant is to the effect that the defendant's leaving at a time which could have been after the crime, although at an unusual hour, is, when standing alone, no more consistent with guilt than *466 with innocence. Harrison v. State, 104 So.2d 391 (Fla.App. 1958).
However, in the case at bar, there exists significantly more evidence in the record than flight standing alone. There is the uncontroverted, unimpeached testimony of Mrs. Bassett. There is the phone call to the police by the defendant's wife and, finally, there is the flight itself. Thus, it is clear that under the facts in this case, the court was correct in instructing the jury on flight. See: Williams v. State, 268 So.2d 566 (Fla.App. 1972).
The seventh point raised on appeal by the appellant deals with whether the court erred in instructing the jury on felony murder. Our review of the record indicates that the trial court correctly instructed the jury on the elements of the felony murder rule. The appellant seems to be challenging prosecution's commenting on felony murder. However, we can find no reversible error on this point.
As to appellant's eighth, ninth and tenth points on appeal, we find no reversible error. The eighth point, dealing with the excusing of a juror because of preconceived notion about the death penalty, has been discussed and disposed of many times. Campbell v. State, 227 So.2d 873 (Fla. 1969) et seq. Point nine relates to another comment made by counsel for the prosecution as to the chance for the rehabilitation of the appellant. Although a distasteful comment, appellant has not cited any authority holding such comment error. The crime in this case is distasteful, but to some extent fair comment is distasteful. We, therefore, again find no reversible error.
Appellant's tenth point concerns whether the trial court did not consider evidence in mitigation when it sentenced the appellant to death. The trial court has carefully set forth all the circumstances in this case, to-wit:
"AS TO AGGRAVATING CIRCUMSTANCES:
(A) That the Defendant, CHARLES WILLIAM PROFFITT, murdered JOEL RONNIE MEDGEBOW from a premeditated design and while the Defendant, CHARLES WILLIAM PROFFITT, was engaged in the commission of a felony, to-wit: burglary.
(B) That the Defendant, CHARLES WILLIAM PROFFITT, has the propensity to commit the crime for which he as convicted, to-wit: Murder in the First Degree and is a danger and menace to society.
(C) That the murder of JOEL RONNIE MEDGEBOW by the Defendant, CHARLES WILLIAM PROFFITT, was especially heinous, atrocious and cruel.
(D) That the Defendant knowingly through his voluntary and intentional acts leading up to and during the course of the commission of the offense for which he was convicted created a great risk to serious bodily harm and death to many persons.
AS TO MITIGATING CIRCUMSTANCES:
The Court finds that the enumerated mitigating circumstances set forth in F.S. 921.141[6](7) are primarily negated, in that,
(A) The Defendant, CHARLES WILLIAM PROFFITT, was convicted in 1967 of Breaking and Entering without permission.
(B) That the capital felony for which the Defendant, CHARLES WILLIAM PROFFITT, was convicted was not committed while the Defendant, CHARLES WILLIAM PROFFITT, was under the influence of extreme mental or emotional disturbance.

*467 (C) That the victim, JOEL RONNIE MEDGEBOW, was not a participant in the Defendant's conduct nor did the victim, JOEL RONNIE MEDGEBOW, consent to the act.
(D) That the Defendant, CHARLES WILLIAM PROFFITT, was the only participant in the capital felony for which he has been convicted.
(E) That the Defendant, CHARLES WILLIAM PROFFITT, did not act under extreme duress during the commission of the offense nor was he, during that period of time under the substantial domination of another person.
(F) That at the time of the commission of the offense the Defendant's capacity to appreciate the criminality to the requirements of law was not substantially impaired.
(G) The age of the Defendant, CHARLES WILLIAM PROFFITT, to-wit: age 28 years, has no particular significance and therefore is not a mitigating circumstance."
We must obviously conclude that no error was committed.
Finally, as to the appellant's eleventh point, whether the death penalty is cruel and unusual punishment, we note that this argument is meant to preserve the point for appeal, however, we are bound by our earlier pronouncement in State v. Dixon, 283 So.2d 1 (Fla. 1973).
After carefully reviewing the record and briefs and after oral argument of the parties, we find that no reversible error has been shown and, therefore, the decision of the circuit court should be and is hereby affirmed.
It is so ordered.
ADKINS, C.J., ROBERTS, BOYD, McCAIN and OVERTON, JJ., and DUVAL, Circuit Judge, concur.