ERVIN, Judge,
concurring in part and dissenting in part.
I concur in all facets of the majority’s opinion, except its affirmance of points III and IV, relating to a purported discovery violation caused by the admission of evidence disclosing that the defendant had refused to submit to fingerprinting, and the alleged error in the consequent instruction to the jury as to the effect of such refusal. In so saying, I fully understand that the state has the right, upon judicial authorization, to require a defendant to be fingerprinted. See Fla.R.Crim.P. 3.220(b). I also agree that evidence of the refusal to submit to a scientific test is admissible against an accused if the test is both admissible and compulsory. State v. Esperti, 220 So.2d 416 (Fla. 2d DCA 1969); State v. Duke, 378 So.2d 96 (Fla. 2d DCA 1979); Lowery v. State, 402 So.2d 1287 (Fla. 5th DCA 1981). Yet, in my judgment, the above cases are distinguishable from the one before us in that it does not appear from them that the state — as here — had previously obtained the evidence sought from the defendant before the demurral occurred, nor had the trial court charged the jury that the refusal was a circumstance from which a consciousness of guilt could be inferred.
In the case below, appellant was fingerprinted shortly after he was arrested on July 2, 1981, and, prior to his trial more than nine months later, had never been released from custody. On March 19, 1982, an order was entered pursuant to Rule 3.220, directing that a second set of prints be taken. Yet the order was not carried out, because the defendant resisted. Despite the declination, the fingerprint examiner was able to make a comparison of the prints taken on July 2, 1981 with a latent print lifted from a bag containing certain firearms ostensibly belonging to defendant. Clearly the record does not disclose, nor does the state contend, that the refusal obstructed the prosecution’s attempt to obtain evidence.
Referring back to the point urging error in the admission of evidence not disclosed during discovery, the record reveals that in its original answer to defendant’s demand for discovery, the state identified only one person to whom defendant had made an oral statement, and it gave the substance of the statement. Although the answer did not give the name of the witness who ultimately testified at trial concerning defendant’s refusal to submit, the answer, at the time it was filed on August 25, 1981, was then truthful. It was not until after the order of March 19, 1982, directing the taking of the second set of prints that the state became aware of the refusal. Once it obtained such knowledge, the state was required, under the continuous duty to disclose provisions of Rule 3.220(f), to notify the defendant of the additionally obtained information. Yet, it failed to do so, and, without prior notice to defense counsel, solicited the answer objected to, which was admitted without the inquiry required by Richardson v. State, 246 So.2d 771 (Fla.1971), into the the circumstances of the violation. On the face of this record, the failure to conduct this examination would appear to me to be reversible error as a *1289 matter of law. See Cumbie v. State, 345 So.2d 1061, 1062 (Fla.1977). It is, moreover, not our province as members of an appellate court to determine that the violation was harmless error. Id.
The state’s only defense in the case at bar to the apparent violation is simply to deny that evidence of the defendant’s opposition to fingerprinting comes within the scope of the discovery rule, because, it contends, such conduct is not in its view an oral statement. It is, however, impossible to determine from the status of this record how the defendant’s refusal was communicated. Was it done by a grimace, a clenched fist, or, as more likely, an oral communication? An inquiry, as required by Richardson, would no doubt have resolved this disputed fact, but, as observed, the trial court never undertook such task. Richardson, moreover, places the burden on the state of showing that the breach of required discovery resulted in no prejudice to the defendant. On this record, it is impossible for me to say that the state has discharged its burden.
The majority’s reference to the definition of the statement contained in Florida Rule Criminal Procedure 3.220(a)(l)(ii) as support for its position that appellant’s refusal could not be considered a statement under that provision is not relevant to a statement made by a defendant. Subsection (a)(l)(ii), by its terms, applies only to statements of persons whose names are furnished by the prosecution to the defense — not statements by defendants. Rule 3.220(a)(l)(iii) places the obligation on the state to furnish to the defense “[a]ny written or recorded statements and the substance of any oral statements made by the accused .... ” (e.s.)
In my view, a far more serious error occurred when, after the reception of the evidence, the court instructed the jury, over objection, that the defendant’s refusal to cooperate was “a circumstance from which consciousness of guilt may be inferred.” This instruction was taken from a portion of the Second District Court’s opinion in Esperti, which, however, did not involve an issue concerning whether such an instruction should have been given. The question before the Second District was simply whether the trial court erred in suppressing testimony pertaining to the defendant’s conduct in refusing to submit to a chemical test which could have determined the presence of powder burns on the defendant’s hands. The suppressed evidence would also have shown that the defendant actively engaged in the destruction of evidence that may have been crucial to the state’s case, thereby leading to the appellate court’s conclusion that defendant’s conduct was a circumstance from which consciousness of guilt could be inferred.
The dissimilarity between the facts in the two cases is obvious: The present case involves no conscious intent to destroy evidence. Indeed, as previously stated, the state already possessed a legible set of defendant’s prints from which it had matched a latent fingerprint lifted from a bag containing firearms. The state has never contended its ability to compare latent prints with defendant’s was frustrated by the refusal. The instruction was thus an impermissible comment on the evidence, the effect of which was to invade the province of the jury, by singling out and emphasizing specific parts of the evidence, without reference to other portions. See Baldwin v. State, 46 Fla. 115, 35 So. 220 (1903).
It is true that instructions to the jury on flight, for example, have been sustained in cases in which the evidence convincingly displayed the fact of flight. See e.g. Proffitt v. State, 315 So.2d 461 (Fla.1975); Martinez v. State, 346 So.2d 1209 (Fla. 3d DCA 1977); Batey v. State, 355 So.2d 1271 (Fla. 1st DCA 1978). The facts in the above cases, however, demonstrate the exception, rather than the rule. “The general rule in Florida ... is to the effect that the defendant’s leaving at a time which could have been after the crime, although at an unusual hour, is, when standing alone, no more consistent with guilt than with innocence.” Proffitt, 315 So.2d at 465-466 (e.s.). The giving of the instruction in Prof-fitt was determined to be without error because there existed significantly more ev *1290 idence in the record than flight, in which a witness testified that she overheard the defendant admit that he had stabbed and killed a man during an attempted robbery.
The general rule reiterated in Proffitt, requiring that the evidence clearly reflect proof of the fact in issue, was recently observed by the Fifth District Court of Appeal in Williams v. State, 378 So.2d 902 (Fla. 5th DCA 1980), wherein the court reversed a conviction of aggravated assault because the evidence admitted was not such as to justify a charge to the jury on flight. There a hitchhiker jumped or fell from a car in which the appellant was a passenger. The officers pursued the car a short distance before it was stopped. The court held that the actions of the appellant were not evidence that he fled the vicinity or hid himself, or did anything indicating an intent to avoid detection. It continued that “[bjecause evidence of flight may be a circumstance tending to prove guilt of the charged crime a flight instruction should be given only when the evidence of flight . .. is clearly established.” 378 So.2d at 903.
In the present case, the fact of resistance was clearly established; yet such fact does not give rise to an inference of consciousness of guilt. The defendant as previously stated had already been fingerprinted, and the state has never contended that the defendant’s obstinance thwarted its attempts to obtain admissible evidence. The effect of upholding such an instruction would, in my judgment, allow the exception to swallow the rule.
Because there are many reasons, as consistent with innocence as with guilt, for the defendant’s noncooperation — including his not altogether unreasonable frustration in being subjected to fingerprinting a second time after more than an eight-month detention awaiting trial — the instruction was in my judgment an impermissible comment on the evidence, which highlighted to the jury a rather morally neutral fact of dubious relevance. I would therefore reverse and remand the case for new trial.