POLEN, J.
 

 Appellant, Victor Boyd, appeals the trial court’s orders denying his motion to suppress evidence and adjudicating him guilty of possession of a firearm by a convicted felon and possession of ammunition by a convicted felon. This court has jurisdiction. Fla. R.App. P. 9.140(b)(1)(A) (2009). For the reasons set forth below, we affirm in part and reverse in part.
 

 Around 8:30 a.m. on the morning of January 31, 2005, Detectives Andrew Fletcher and Osvaldo Tianga of the BSO picked up the garbage from the swale in front of Boyd’s home. Based on the contents of the garbage and other information from an ongoing investigation of Boyd, Tianga applied for a search warrant. In support of that application, Tianga submitted a probable cause affidavit in which he stated he believed drugs and drug paraphernalia may be found in the residence based on the following facts:
 

 On December 1, 2004, another officer of the BSO arrested Walter Freeman who was in possession of 140 grams of cocaine. In a
 
 post-Mircmda
 
 statement, Freeman claimed the cocaine in his possession was going to be supplied to Boyd.
 

 During December 2004 and January 2005, Tianga met with a confidential in
 
 *814
 
 formant “who has proven to be trustworthy and reliable in narcotics investigations in the past” and who is a former cocaine dealer. The informant provided Tianga with Boyd’s home address, informed Tianga that Boyd received his cocaine supply from a source in Dade County and distributes it throughout Broward County, and stated that during the week of January 23-28, 2005, he had been inside Boyd’s residence and had seen a kilogram amount of cocaine.
 

 During January 2005, Tianga met with a second confidential informant who was independent and separate from the first and who had proven trustworthy and reliable in previous narcotics investigations. The informant stated that Boyd runs a cocaine distribution operation from his residence.
 

 During January 2005, another BSO police officer met with a confidential informant independent from Tianga’s informants who indicated that Boyd operates a cocaine distribution operation in Bro-ward County and that he had observed Boyd provide cocaine to various individuals. Boyd had supplied the informant with cocaine in the past.
 

 On January 13, 2005, during a surveillance of the residence, Tianga -witnessed Boyd enter the residence through the front door with a key.
 

 On January 31, 2005, Tianga conducted a trash pickup at the premises to be searched. Tianga collected the trash from the swale in front of the residence and, upon searching the contents of the garbage bag, retrieved a plastic bag which contained visible amounts of cocaine residue. The trash also contained mail and court documents with Boyd’s name on them.
 

 A field test was conducted on the plastic bag which contained suspect cocaine, and the test results confirmed that the substance was cocaine.
 

 Based on the foregoing, a judge issued a warrant commanding Tianga and other BSO officers to search Boyd’s residence.
 

 In anticipation of receiving a search warrant Fletcher and Tianga stopped Boyd’s wife and brought her back to the residence where she gave them a key to the front door. Boyd, who had gone to work at a neighbor’s house nearby, was also brought back to the residence. Around 9:45 a.m., Fletcher and Tianga unlocked the front door, announced their presence, went inside to see if there was anyone inside the home, left the residence, secured the door, and awaited a search warrant. The preliminary search was conducted to ensure officer safety and was limited to searching for individuals standing or hiding inside the house. The officers did not look inside drawers or cabinets.
 

 The officers received a search warrant around 11:45 a.m., and Tianga read the warrant to Boyd. Tianga also read Boyd and Boyd’s wife their
 
 Miranda,
 
 rights. Tianga testified that at this point Boyd and his wife were not under arrest but were being detained pending the investigation. Boyd and his wife were not under arrest until the officers searched the house and found a firearm.
 

 The officers proceeded to search the residence. Fletcher and Tianga searched the master bedroom where Tianga found a loaded .357 firearm next to the bed on top of a TV. Tianga also found ammunition for a 9 mm wrapped in a napkin on a shelf on the man’s side of the closet.
 

 Following the search, Boyd and his wife were taken to the police station for questioning. Approximately two hours after being read their
 
 Miranda
 
 rights prior to the execution of the search warrant, Boyd
 
 *815
 
 and his wife were interviewed in a room equipped with covert audio and video recording devices. During the interview, Boyd first told Tianga that the gun belonged to his cousin. Boyd ultimately stated that the gun was for the house protection. When Tianga left the room, Boyd and his wife had a conversation in which Boyd told his wife he usually keeps the gun under his pillow but the police found it on top of the TV monitor.
 

 Based on the foregoing, Boyd moved to suppress the fruits of the allegedly illegal search of his residence, including “any and all cocaine residue, press(es), bagg(ies), videotape(s), recording machine(s), firearm(s), ammunition, gun box(es) or case(s), paper(s), photo(s) and illegally obtained statement(s) of the Defendant to police, and/or between the Defendant and his spouse ...” Boyd argued there was no probable cause to support the issuance of the warrant and that his statements had been illegally obtained. Specifically, Boyd asserted that a single trash pull together with uncorroborated anonymous information could not provide probable cause necessary for a search warrant. Boyd also contended that the
 
 Miranda
 
 warnings he received before the execution of the search warrant were ineffective as to his statement made at the police station hours later, and thus, that his later statements were illegally obtained. Finally, Boyd argued the dialogue between him and his wife was a privileged marital communication and must be suppressed. The trial court held multiple hearings on the motions to suppress and ultimately denied them.
 

 The DVD of Boyd conversing with his wife in the police interrogation room was played for the jury during trial. Because some of the conversation was difficult to hear, Tianga testified that he had listened to the conversation when it took place, had reviewed the recording several times. Tianga then testified to Boyd’s statements made during the conversation. When the State asked Boyd’s wife to testify regarding what was said during the conversation, defense counsel objected, and the trial court overruled the objection.
 

 Boyd was adjudicated guilty of possession of a firearm by a convicted felon and possession of ammunition by a convicted felon. The trial court sentenced Boyd as an habitual felony offender to twenty years on each count to run concurrently with credit for time served.
 

 Boyd raises several arguments on appeal. We write only to address (1) whether the search warrant was supported by probable cause, (2) whether the conversation between Boyd and his wife in the interrogation room was a privileged, marital communication, and (3) whether convictions for possession of a firearm and possession of ammunition by a convicted felon violate double jeopardy. We reverse and remand for the trial court to remedy the violation of double jeopardy and affirm as to all other points raised on appeal.
 

 Boyd argues the probable cause affidavit submitted in support of Tianga’s application for a search warrant fails to establish probable cause to believe drug trafficking was occurring in Boyd’s residence because the affidavit never established the informants’ credibility and relied on a single trash pull. The State replies that there was no error because, based on the totality of the circumstances, the judge had a substantial basis for concluding that probable cause existed.
 

 A trial court’s determination of the legal issue of probable cause is subject to
 
 de novo
 
 review.
 
 Pagan v. State,
 
 830 So.2d 792, 806 (Fla.2002). However, as the court in
 
 Pagan
 
 recognized:
 

 
 *816
 
 The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a “substantial basis for ... concluding]” that probable cause existed.
 

 Id.
 
 (quoting
 
 Illinois v. Gates, 462
 
 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). This determination must be based on the four corners of the probable cause affidavit, and an affiant relying on confidential informants must either state he has personal knowledge of any confidential informant’s veracity or provide independent corroborating evidence.
 
 Id.
 
 (citations omitted). These elements are “relevant considei-ations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of the tip, by a strong showing as to the other, or by some other indicia of reliability.”
 
 Gates,
 
 462 U.S. at 233, 103 S.Ct. 2317.
 

 Boyd relies on
 
 Getreu v. State,
 
 578 So.2d 412 (Fla. 2d DCA 1991), in which the court held that a probable cause affidavit is deficient when it fails to state when and where the confidential informant observed the individual in possession of drugs.
 
 Id.
 
 at 413-14. However,
 
 Getreu
 
 involved an affidavit which failed to state that the drugs were observed inside the residence to be searched, whereas in the present case, one informant stated he had observed a kilogram amount of cocaine inside the residence during the week prior to the application for the search warrant. Moreover, this court certified conflict with
 
 Getreu
 
 in
 
 Johnson v. State,
 
 872 So.2d 961 (Fla. 4th DCA 2004), and held that where an affidavit fails to specify an exact date on which an informant observed an individual with drugs but is otherwise supported by sufficient facts, the affidavit is merely ambiguous and is not fatally deficient.
 

 The facts of the present case are more like those in
 
 Green v. State,
 
 946 So.2d 558 (Fla. 1st DCA 2006). There, the probable cause affidavit stated that three separate, independent, confidential informants had provided information to the af-fiant, Crimestoppers, and another police officer regarding defendant’s manufacture of methamphetamine in his camper on a campground.
 
 Id.
 
 at 560-61. One of the informants stated he had observed Green cooking the drugs inside the camper within the past twenty days, and all three provided some details regarding Green’s operation which were ultimately corroborated by the detective’s independent investigation.
 
 Id.
 
 The court held that, even though the informants’ veracity was not personally known to the affiant, the warrant was supported by probable cause because the credibility of each confidential informant was bolstered by the accounts of the others and by the affiant’s independent verification.
 
 Id.
 
 at 561. Additionally, the credibility of the informants was bolstered because the informants provided the information through three different means.
 
 Id.
 
 at 562. Finally, two of the three informants stated they had personally witnessed Green cooking the drugs.
 
 Id.
 

 In the present case, Tianga stated that two of the three confidential informants had proven trustworthy in previous narcotics investigations. Even though he does not state that their veracity is personally known to him, it was presumably known to his colleagues. The four different informants provided their information through three different means: the first made his statement to Detective Miller following his
 
 *817
 
 arrest, the second and third provided their information directly to Tianga, and the fourth explained Boyd’s operation to Detective Spear. Each informant’s credibility is bolstered by the corroborating accounts of the other three. Tianga verified that the address provided by the second and third informants was, in fact, Boyd’s place of residence. The second informant stated he had personally observed a kilogram amount of cocaine inside Boyd’s residence within the previous week, and the fourth informant stated he had purchased cocaine from Boyd in the past. Finally, the second and third informants stated Boyd had been arrested for narcotics violations in the past. Tianga verified that Boyd had been arrested several times for narcotics violations. Given the totality of the facts, we hold that the issuing judge had a substantial basis for finding that there was probable cause to believe drugs would be located inside Boyd’s residence. Therefore, the trial court did not err in denying Boyd’s motion to suppress for lack of probable cause.
 

 Boyd asserts the trial court erred in denying his motion to suppress the DVD of the conversation he had with his wife while in the interrogation room because the conversation was a privileged marital communication. Boyd also contends the court erred in allowing his wife to testify regarding the conversation over defense objection.
 

 Section 90.504(1), Florida Statutes (2009), provides:
 

 A spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, communications which were intended to be made in confidence between the spouses while they were husband and wife.
 

 Section 90.507, Florida Statutes (2009), limits the privilege by holding that it is waived if a holder of the privilege makes the communication when he has no reasonable expectation of privacy. Therefore, for a marital communication to be protected, the court must determine the couple had a reasonable expectation of privacy at the time the communication took place.
 
 Johnson v. State,
 
 730 So.2d 368, 369-70 (Fla. 5th DCA 1999).
 

 In
 
 Taylor v. State,
 
 855 So.2d 1 (Fla.2003), defendant’s wife was compelled to testify over defense objection regarding a conversation she had with defendant at the jail in which defendant had asked her to buy a bus ticket for the man defendant claimed had robbed and killed the victim. Id. at 26-27. This testimony undermined defendant’s theory of defense because, if the other man had robbed and killed the victim, he would not have required money for a bus ticket. See
 
 id.
 
 The Florida Supreme Court held the trial court erred in allowing the testimony because the discussion had been a privileged marital communication under section 90.504 and the privilege had not been waived.
 
 Id.
 

 The Court also wrote the following footnote:
 

 The State also argues that Taylor waived the marital privilege because the conversation in question took place at the jail and therefore Taylor did not have a reasonable expectation of privacy.
 
 See, e.g., Proffitt v. State,
 
 315 So.2d 461, 465 (Fla.1975), aff'd, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976);
 
 Johnson v. State,
 
 730 So.2d 368, 370 (Fla. 5th DCA 1999). However, the cases cited by the State in support of this proposition involve situations where otherwise privileged conversations were taped or overheard by third parties. As a general rule, when third party eavesdroppers hear otherwise privileged communications, the communications are not
 
 *818
 
 privileged unless the communicating parties had a reasonable expectation of privacy.
 
 See
 
 § 90.507 Fla. Stat. (1999);
 
 see also
 
 Charles W. Ehrhardt,
 
 Florida Evidence
 
 § 507.2 (2001 ed.). In the instant case, however, there was no third party involved, no one overheard the conversation, and the trial court required Mrs. Taylor to directly testify as to the privileged conversation.
 

 Id.
 
 at 27 n. 30. Because no one overheard or taped Taylor’s conversation with his wife, it was error to require her to testify about that conversation.
 
 Id.
 

 The present case is distinguishable from
 
 Taylor
 
 in that the conversation between Boyd and his wife was tape recorded by a third party and listened to by the police while it was taking place. Both Tianga and Boyd’s wife testified about the statements made by Boyd during the conversation. A broad reading of the foregoing footnote supports the proposition that a conversation which is tape recorded or overheard by a third party is generally not privileged because there is no reasonable expectation of privacy. However, the mere fact that a conversation is recorded or overheard does not compromise a couple’s privilege if the only person who can testify regarding the content of the communication is a spouse. When a recording is unintelligible to a third party, it is as though the conversation was never recorded at all. Had Boyd and his wife been the only individuals able to testify about the conversation, it would have been error to allow the wife’s testimony over defense objection. Here, Tianga had listened to the conversation and reviewed the DVD several times and was able to testify about what Boyd was saying. Thus, in the present case, the tape recording compromised the privilege, and the trial court did not err in allowing Boyd’s wife to testify about her conversation with Boyd in the interro-
 

 gation room. Any testimony by Boyd’s wife was cumulative.
 

 Finally, we write to address whether dual convictions for possession of a firearm by a convicted felon and possession of ammunition by a convicted felon violate double jeopardy. In
 
 Hill v. State,
 
 711 So.2d 1221 (Fla. 1st DCA 1998), the First District applied the
 
 Grappins/Watts
 
 “a/any test” to section 790.23, Florida Statutes, under which Boyd was convicted of one count possession of a firearm by a convicted felon and one count possession of ammunition by a convicted felon.
 
 Id.
 
 at 1223. The court determined that because the word “any” precedes the list of items a felon is prohibited from possessing, “the prohibition against double jeopardy precludes more than one conviction for the possession at the same time of multiple firearms by a convicted felon.”
 
 Id.
 
 at 1224-25. Although the present case may be distinguished from
 
 Hill
 
 because Boyd possessed a firearm and ammunition, such a factual distinction is immaterial because, under the court’s reasoning in
 
 Hill,
 
 ammunition is also listed following the word “any.” Therefore, we reverse and remand for the trial court to vacate one of the convictions.
 

 We are unconvinced as to the other points raised by Boyd on appeal.
 

 Affirmed in part, reversed in part, and remanded.
 

 WARNER and TAYLOR, JJ., concur.