395 So.2d 501 (1981)
Bennie DEMPS, Appellant,
v.
STATE of Florida, Appellee.
No. 54249.
Supreme Court of Florida.
January 8, 1981.
Rehearing Denied April 15, 1981.
*503 John L. Carroll, Montgomery, Ala. and Julius Williams, Orlando, for appellant.
Jim Smith, Atty. Gen. and Miguel A. Olivella, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This case is properly before us[1] on direct appeal from the Circuit Court for the Eighth Judicial Circuit. Appellant Demps was convicted and sentenced to death for the slaying of Alfred Sturgis.[2] For the following reasons we affirm the conviction and sentence.
On September 6, 1976, personnel at the Florida State Prison discovered inmate Alfred Sturgis in a cell, bleeding profusely from stab wounds. He was rushed first to the hospital at Union Correctional Institute, then to the state prison at Lake Butler. Due to inadequate facilities at both institutions, Sturgis was taken to Shands Teaching Hospital in Gainesville, where he died soon after arrival.
A grand jury indicted inmates Bennie Demps, James Jackson and Harry Mungin for the murder of Alfred Sturgis. In the course of preliminary depositions, defense counsel learned that while en route to the hospital, Sturgis told correctional officer A.V. Rhoden that appellant, Jackson and Mungin had committed the knifing. Rhoden later reduced the statement to writing and included it in a report filed with R.K. Griffis, a Department of Corrections investigator. After defense requests to produce the written document, the state informed the court that Mr. Griffis had misplaced Rhoden's statement. In a pretrial hearing the court refused to dismiss the indictment based on the state's failure to produce Rhoden's report.
At trial Mr. Rhoden explained to the jury what Sturgis had told him in the ambulance:
Q [Mr. Elwell] All right. What happened after that?
A He [Sturgis] reached up and took my hand and ...
Q Were you standing up, Mr. Rhoden?
A Yes, sir.
Q And would you indicate how he reached up and took your hand?
A He just reached his hand up, picked his arm up, it was laying down on the stretcher, and he just picked it up and taken my hand.
Q And did you note anything about his appearance in addition to what you just testified to?
A He was chalky looking.
Q All right.
A His eyes was rolling back and forth in his head.
Q And other than grabbing your hand, did he do anything else?
A Yes, sir. He told me, he said:
"Mr. Rhoden, you got to help me. I don't believe I'm going to make it."
And I said: "You got to, Sturgis."
He said: "I don't think I will."
I said, "You got to, you got to help me get the ones that done it."
And he said: "Well, you have to get them for me."
Q Did he say anything else?
A Yes, sir, he said:
"You have to get Mungin and Demps, they held me and Jackson stabbed me."
I asked him, "Which Jackson?"
And he said: "Toothless Jackson."
Q How long did this statement take, from the time that he grabbed your hand and said:
"Mr. Rhoden, I don't believe I'm going to make it."
until he finished; how long did that statement take?

*504 A Just a very short time.
Q Were there any interruptions by any person during the giving of that statement to you?
A No, sir.
Another witness for the prosecution, fellow inmate Larry Hathaway, testified that while walking past Harry Mungin's cell on the afternoon of the murder, Mungin told him to go downstairs and stay there, because Mungin "was fixing to get rid of a snitch." He followed Mungin's suggestion but returned a short while later, at which time he noticed a struggle going on in the cell in which Sturgis was later found. Mungin was standing in the door of the cell; inside, Hathaway could see appellant holding Sturgis down on the bed while Jackson struck him with downward thrusts. Upon seeing this, Hathaway quickly left the scene.
Defense counsel sought to impeach Hathaway's testimony by showing that Hathaway was a homosexual, on the premise that Hathaway implicated the codefendants in exchange for a transfer to the prison where his lover, Robert Ziegler, resided. The trial court held that Hathaway's homosexuality was inflammatory and irrelevant and limited questioning to whether Ziegler and Hathaway were "real good friends."
At the sentencing phase the jury recommended sentences of life imprisonment for Mungin and death for Jackson and appellant. The trial judge sentenced Mungin and Jackson to life, but sentenced appellant to death.
Appellant challenges his conviction on three grounds, two of which merit discussion.[3] He first contends that the state violated the rules of discovery and deprived him of a valuable tool for cross-examination by not producing A.V. Rhoden's written statement of his conversation with Sturgis en route to the hospital.
Concededly, Florida Rule of Criminal Procedure 3.220(j)(1) authorizes a trial judge to impose a broad range of sanctions against a party for nonproduction of discoverable material.[4] But we disagree with appellant's conclusion that the state was in breach of a discovery rule in this case. In response to the trial court order compelling discovery of Rhoden's report, the state made an adequate and uncontroverted explanation that the statement had simply disappeared. In fact, the evidence suggests that the state attorney never had access to Rhoden's statement. Mr. Griffis testified that shortly after placing the report in his personal investigative file, he lost the file, which presumably to this day remains missing. Under these peculiar circumstances, the state should not be held accountable for the nonproduction of the misplaced document.
Nor can it be said that the loss of Rhoden's statement impinged upon appellant's right to a fair trial. While Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), hold that in certain instances a criminal defendant may be deprived of a fair trial by prosecutorial suppression of evidence, the evidence must be material to guilt or innocence, and its omission must have caused prejudice to the accused. There is nothing in this record to indicate that Rhoden's written statement varied from his testimony at trial, or that its absence prejudiced his defense in any other way. See State v. Sobel, 363 So.2d 324 (Fla. 1978); Salvatore v. State, 366 So.2d 745 (1978).
*505 We are similarly unpersuaded that the court erred in forbidding reference to Larry Hathaway's homosexuality on cross-examination. A trial judge enjoys broad discretion in determining the permissible scope of cross-examination. Ho Yin Wong v. State, 359 So.2d 460 (Fla.3d DCA 1978); Baisden v. State, 203 So.2d 194 (Fla.4th DCA 1967). The trial court here quite properly concluded that the inflammatory and prejudicial effect of evidence relating to Hathaway's homosexuality far outweighed its dubious relevance. See Proffitt v. State, 315 So.2d 461 (Fla. 1975).
With regard to the imposition of the death sentence, appellant takes issue with the trial court's instructions on mitigating circumstances in two respects, that they improperly mandated the death penalty if no mitigating circumstances were found, and they limited consideration of mitigating factors to those statutorily enumerated. Since these issues were not raised by defense counsel at trial, they are not reviewable here. Castor v. State, 365 So.2d 701 (Fla. 1978); McCaskill v. State, 344 So.2d 1276 (Fla. 1977); Douglas v. State, 328 So.2d 18 (Fla. 1976). In any event, we note that the instructions tracked Florida's Standard Jury Instructions and in no way called for a mandatory death sentence. And as we have recently stated on two separate occasions, the instructions do not limit jury consideration to the statutorily enumerated mitigating circumstances. Peek v. State, 395 So.2d 492 (Fla. 1980); Songer v. State, 365 So.2d 696, 700 (Fla. 1978).
The trial court found four aggravating circumstances applicable to this case.[5] Two of these findings are erroneous. *506 We do not believe this murder to have been so "conscienceless or pitiless" and thus set "apart from the norm of capital felonies"[6] as to render it "especially heinous, atrocious, or cruel."[7]See Lewis v. State, 377 So.2d 640 (Fla. 1979); Cooper v. State, 336 So.2d 1133 (Fla. 1976); Tedder v. State, 322 So.2d 908 (Fla. 1975). Secondly, though there was some evidence to show that the murder was committed for the purpose of avoiding or preventing a lawful arrest,[8] it surely cannot be said that the evidence established this factor beyond a reasonable doubt. See State v. Dixon, 283 So.2d 1, 9 (Fla. 1973); Phippen v. State, 389 So.2d 991 (Fla. 1980).
There remain, however, two valid aggravating circumstances[9] counterbalanced by no mitigating circumstances. Since death is presumed in this situation,[10] the trial court's improper consideration of the factors discussed above does not render the sentence invalid:
It appears that the United States Supreme Court does not fault a death sentence predicated in part upon nonstatutory aggravating factors where there are no mitigating circumstances. The absence of mitigating circumstances becomes important, because, so long as there are some statutory aggravating circumstances, there is no danger that nonstatutory circumstances have served to overcome the mitigating circumstances in the weighing process which is dictated by our statute.
Elledge v. State, 346 So.2d 998, 1002-03 (Fla. 1977) (emphasis in original).
Appellant's final attack centers on the disparity of sentences imposed upon the three codefendants. He cites Slater v. State, 316 So.2d 539 (Fla. 1975), for the proposition that equally culpable defendants should receive equal sentences. While we agree with and reaffirm the principle enunciated in Slater, this is a different case. Nothing in Slater prohibits a trial judge from taking into consideration the quality of aggravating circumstances applicable to each defendant.[11] Of these codefendants, only appellant had the loathsome distinction of having been previously convicted of the first-degree murder of two persons and attempted murder of another, escaping the gallows only through the intervention of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The record amply supports the judge's determination that appellant was especially deserving of the death sentence. See also, Jackson v. State, 366 So.2d 752 (Fla. 1978); Salvatore v. State, 366 So.2d 745 (Fla. 1978).
Accordingly, the conviction and sentence of death are affirmed.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const. (1972).
[2] Appellant's codefendants, Harry Mungin and James Jackson, were convicted of first-degree murder but sentenced to life imprisonment for the same offense. Their convictions and sentences are not before us today, though the disparity of sentences among the three defendants will be addressed later in the opinion.
[3] We have, of course, carefully reviewed appellant's argument concerning certain photographic evidence, but find it unpersuasive.
[4] Sanctions
(1) If, at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant to an applicable discovery rule, the court may order such party to comply with the discovery or inspection of materials not previously disclosed or produced, grant a continuance, grant a mistrial, prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.
[5] The trial court's findings with respect to these four aggravating circumstances are as follows:

1. THE CRIME FOR WHICH THE DEFENDANT IS TO BE SENTENCED WAS COMMITTED WHILE THE DEFENDANT WAS UNDER SENTENCE OF IMPRISONMENT.
As pointed out in mitigating circumstances one, at the time of this murder Defendant Demps was serving two consecutive life sentences having been spared death when the death penalty in Florida was declared unconstitutional plus 20 years for his attempt to kill the third victim. It is the Court's opinion that this is a strong aggravating circumstance.
2. AT THE TIME OF THE CRIME FOR WHICH HE IS TO BE SENTENCED THE DEFENDANT HAD BEEN PREVIOUSLY CONVICTED OF ANOTHER CAPITAL OFFENSE OR OF A FELONY INVOLVING THE USE OR THREAT OF VIOLENCE TO SOME PERSON.
Again as pointed out in mitigating circumstances one and aggravating circumstance one, Defendant Demps had previous convictions as contemplated by this aggravating condition. The evidence showed that Defendant Demps locked three innocent persons in the trunk of one of the victims' automobiles and at close range repeatedly fired a rifle through the trunk into the bodies of the trapped victims killing two and wounding the third one, the heinous details of which are set forth in the presentence investigation considered by the Court in this case. It is the Court's opinion there are extreme aggravating circumstances under this condition.
.....
5. THE CRIME FOR WHICH THE DEFENDANT IS TO BE SENTENCED WAS COMMITTED FOR THE PURPOSE OF AVOIDING OR PREVENTING A LAWFUL ARREST OR EFFECTING AN ESCAPE FROM CUSTODY.
The evidence in this case showed Defendant Demps was eliminating a "snitch." There is no evidence as to what this victim knew or why he was senselessly murdered. It may be assumed that the victim knew something and that whatever he knew had to be forever put to rest. It is the Court's opinion that there is a mild aggravating circumstance under this condition.
.....
8. THE CRIME FOR WHICH THE DEFENDANT IS TO BE SENTENCED WAS ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL. "HEINOUS" MEANS EXTREMELY WICKED OR SHOCKINGLY EVIL. "ATROCIOUS" MEANS OUTRAGEOUSLY WICKED AND VILE. "CRUEL" MEANS DESIGNED TO INFLICT A HIGH DEGREE OF PAIN, UTTER INDIFFERENCE TO OR ENJOYMENT OF THE SUFFERING OF OTHERS; PITILESS.
Defendant Demps senseless killing of his fellow inmate was extremely offensive and cruel and demonstrated total disregard for the life and safety of victim Alfred Sturgis. It was especially cruel because the victim has been denied his right to live and his right to return to society, his family and friends after payment for the crime he committed which resulted in his imprisonment; and the fact that he was an inmate does not make his life any less precious than any citizen in a free society.
It is the Court's opinion there are very strong aggravating circumstances under this condition.
[6] State v. Dixon, 283 So.2d 1, 9 (Fla. 1973).
[7] § 921.141(5)(h), Fla. Stat. (1979).
[8] § 921.141(5)(e), Fla. Stat. (1979).
[9] The capital felony was committed by a person under sentence of imprisonment, § 921.141(5)(a), and the defendant was previously convicted of another capital felony, § 921.141(5)(b).
[10] State v. Dixon, 283 So.2d at 9.
[11] Cf. Elledge v. State, 346 So.2d 998 (Fla. 1977). (The purpose of considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant.)