**Bennie E. DEMPS, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Secretary, Florida Department of Corrections, and Jim Smith, Attorney General, State of Florida, Respondents-Appellees.**

No. 85–3985.

United States Court of Appeals, Eleventh Circuit.

Dec. 2, 1986.

Deborah A. Ellis, Morris Dees, J. Richard Cohen, Montgomery, Ala., for petitioner-appellant.

Mark C. Menser, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellees.

Before FAY, JOHNSON and CLARK, Circuit Judges.

PER CURIAM.

Bennie E. Demps, (hereinafter petitioner), appeals from a denial of his petition for habeas corpus on the following grounds: (1) that the district court erred in dismissing petitioner's claim that the state failed to reveal a deal with its key witness, (2) that the district court erred in dismissing petitioner's claim that the trial court unconstitutionally limited the cross examination of the state's key witness, and (3) that the district court erred in refusing to grant an evidentiary hearing on petitioner's claim that the state substantially interfered with a defense witness. We affirm the denial of petitioner's claim that the state failed to reveal a deal with its key witness, but for reasons other than those advanced by the district court. We also affirm the district court with respect to the cross examination and witness interference claims.

## FACTS

On September 6, 1976, personnel at the Florida State Prison (hereinafter FSP) found Alfred Sturgis, a prisoner, in his cell bleeding from stab wounds. En route to the hospital where he would later die, Sturgis gave a dying declaration naming his three assailants: Harry Mungin, James Jackson and petitioner, all fellow inmates.[1] At the time of the crime, petitioner was at FSP serving sentences for two prior first degree murder convictions and for convictions from various other crimes. Petitioner had in fact been sentenced to death in connection with his two previous murder convictions, however, this sentence was later reduced pursuant to *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

In addition to the dying declaration of Sturgis, the state's case against the three defendants included the testimony of the sole eyewitness to the crime, inmate Larry Hathaway. Hathaway corroborated Sturgis' dying declaration by testifying at trial that, as he passed along a corridor at FSP, he witnessed Mungin standing in a cell doorway, apparently acting as a lookout. As Hathaway walked past Mungin, he noticed petitioner was holding Sturgis as Jackson stabbed him. Fearing that other inmates would retaliate (Sturgis was apparently killed for being a "snitch"), Hathaway first informed investigators he knew nothing of the Sturgis killing. Prior to trial, another inmate, Michael Squires, informed petitioner's co-defendant, Mungin, that he had evidence impeaching Hathaway's testimony. According to Squires, Hathaway had confided he was not a witness to the killing and knew nothing about the incident. Subsequently, Squires was listed as a defense witness for petitioner and his co-defendants. The record reveals, however, that neither petitioner or his co-defendants made any attempt to have Squires testify at trial.

During the trial, Hathaway was called as a witness by the state to give his eye-

---

1. Petitioner and his co-defendants, Mungin and Jackson, were jointly tried although each was represented by separate counsel. Petitioner's co-defendants are not the subject of this appeal.

witness testimony. Prior to Hathaway's testimony, the trial court conducted an in-chambers hearing to determine the scope of permissible cross-examination of Hathaway by defense counsel. Counsel for petitioner argued the state had promised Hathaway a transfer with his homosexual lover, Robert Zeigler,[2] to another correctional institution in exchange for Hathaway's testifying on behalf of the state. The trial court allowed cross-examination of Hathaway with respect to petitioner's claim that Hathaway was to be transferred with Zeigler in exchange for Hathaway's testimony. The trial court denied the petitioner's request to raise the homosexuality issue finding it inflammatory and irrelevant, but allowed petitioner to establish that Hathaway and Zeigler were "very close friends."

On March 16, 1978, petitioner and his co-defendants were convicted of the first-degree murder of Sturgis. The jury recommended the death penalty for petitioner, and on April 17, 1978, the trial court sentenced petitioner to death by electrocution. The Florida Supreme Court affirmed on appeal. *Demps v. State*, 395 So.2d 501 (Fla.1981). The United States Supreme Court denied certiorari on October 13, 1981. *Demps v. Florida*, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981).

Petitioner initiated post-conviction proceedings pursuant to Fla.R.Crim.P. 3.850,[3] arguing, *inter alia*, that there was improper inducement of Hathaway's testimony by state officials and that the state through the Department of Corrections interfered with a defense witness, Michael Squires. This was the first time petitioner raised the claim of state interference with Squires' decision to testify. The trial court denied petitioner's motion without a hearing. The

Florida Supreme Court reviewed the trial court's summary rejection and affirmed the trial court on all of petitioner's claims except the claim of state interference with defense witness, Squires. *Demps v. State*, 416 So.2d 808, 809 (Fla.1982). The case was remanded for an evidentiary hearing on petitioner's claim of state interference with Squires. *Id.* at 810. After the evidentiary hearing, the trial court found petitioner had failed to prove his claim of state interference with Squire's testimony "by any believable evidence." This decision was affirmed on appeal. *Demps v. State*, 462 So.2d 1074 (Fla.1984). Petitioner then filed for a writ of habeas corpus in the United States District Court for the Middle District of Florida alleging: (1) that the state failed to reveal a deal with Hathaway, (2) the trial court erred in limiting the cross-examination of Hathaway and, (3) that the state interfered with defense witness Squires. After oral argument, the district court denied relief. Subsequently, petitioner appealed to this court.

## ISSUES

### I. EXCLUSION OF HATHAWAY'S HOMOSEXUAL RELATIONSHIP

In the district court, petitioner again argued the trial court erred in disallowing any reference to Hathaway's homosexual relationship with Zeigler. Petitioner's position is that the state transferred Hathaway and Zeigler in exchange for Hathaway's testimony. This claim was first raised during the state trial in an in-chambers conference prior to petitioner's cross-examination of Hathaway. During this conference, the following colloquy occurred between the court and counsel.

---

**2.** The record reveals Robert Zeigler was an inmate at FSP at the time of the killing.

**3.** Fla.R.Crim.P. 3.850 provides in pertinent part as follows:

A prisoner in custody under sentence of a court established by the laws of Florida claiming the right to be released upon the ground that the judgment was entered or that the sentence was imposed in violation of the Constitution or Laws of the United States, or of

the State of Florida, or that the court was without jurisdiction to enter such judgment or to impose such sentence or that the sentence was in excess of the maximum authorized by law, or that his plea was given involuntarily, or the judgment or sentence is otherwise subject to collateral attack, may move the court which entered the judgment or imposed the sentence to vacate, set aside or correct the judgment or sentence.

Mr. Carroll (counsel for petitioner): .. what we're saying is that they have bought their testimony by getting a transfer and that the testimony that they are giving ...

The Court: Well you can talk about getting transferred, I'm not going to prohibit you from asking about that.

Mr. Carroll: The reason we need to get into their relationship is because that is the bottom line of their transfer, that is why they wanted a transfer.

Mr. Elwell (counsel for the state): Where is that supported other than your statement?

The Court: ... I'm not going to permit the testimony regarding the homosexual relationship between Zeigler and Hathaway. I will permit your examining these individuals, as any others, regarding a transfer for their testimony. You can argue that, but I can't concede and I can't conceive that the homosexual relationship would be relevant to this case.

The trial judge disallowed any reference to Hathaway's homosexuality by ruling it was both inflammatory and irrelevant. Petitioner appealed the trial court's disallowance of any reference to Hathaway's homosexual relationship directly to the Florida Supreme Court. *Demps*, 395 So.2d 501 (Fla.1981). In affirming the trial court's ruling, the Court held,

> We are ... unpersuaded that the [trial] court erred in forbidding reference to Larry Hathaway's homosexuality on cross-examination. A trial judge enjoys broad discretion in determining the permissible scope of cross-examination. *Ho Yin Wong v. State*, 359 So.2d 460 (Fla. 3d DCA 1978); *Baisden v. State*, 203 So.2d 194 (Fla. 4th DCA 1967). The trial court here quite properly concluded that the inflammatory and prejudicial effect of evidence relating to Hathaway's homosexuality far outweighed its dubious relevance. *See Proffitt v. State*, 315 So.2d 461 (Fla.1975).

*Id.* at 505. Petitioner then moved for post conviction relief pursuant to Fla.R.Crim.P. 3.850 alleging improper inducement, on be-

half of the state, regarding Hathaway's testimony. The trial court summarily rejected petitioner's claim. The Supreme Court of Florida affirmed the trial court with respect to petitioner's claim of improper state inducement regarding Hathaway's testimony, *Demps*, 416 So.2d 808, 809 (Fla. 1982), stating:

> The fourth claim is that the state illegally solicited the testimony of its central witness, Larry Hathaway, through inducements. This claim was effectively raised on direct appeal when appellant attacked the trial court's disallowance of evidence showing Hathaway was homosexual and that his testimony was given in exchange for a transfer to a prison with his lover. *See Demps v. State*, 395 So.2d at 504.

*Id.* at 809.

Petitioner next brought this claim before the district court in his petition for writ of habeas corpus. Petitioner argued the state court trial was rendered fundamentally unfair due to the exclusion of evidence regarding Hathaway's homosexual relationship with Zeigler. We note at the outset federal courts are properly reluctant to second-guess state court evidentiary rulings on habeas review and rarely grant relief on the basis of such rulings. *Boykins v. Wainwright*, 737 F.2d 1539, 1543–44 (11th Cir.1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985) (citations omitted). Petitioner observes that this circuit has "consistently stated that where a trial court's evidence ruling renders a state criminal proceeding fundamentally unfair the petitioner is entitled to relief. (citations omitted). Fundamental fairness is violated when the evidence excluded is 'material in the sense of a crucial, critical, highly significant factor.'" (citation omitted). *Id.* at 1544. We agree with the proposition of law espoused by petitioner; however, we decline to hold that petitioner in the case at bar was denied fundamental fairness merely because the trial judge refused to allow petitioner to establish that Hathaway was

homosexual.[4] The trial court allowed petitioner to fully cross-examine Hathaway regarding any transfer in exchange for his testimony.[5] A review of the record shows that all witnesses at trial consistently testified that the transfer was for the purpose of protection. Further, Hathaway's testimony corroborated Sturgis' dying declaration wherein petitioner was specifically named as one of the assailants. The district court held the trial court's procedural ruling neither kept out evidence that was in itself exculpatory nor admitted evidence that was incriminating. The evidence was tangentially directed at impeaching the credibility of a state's witness. The record in this case fails to support petitioner's argument that the homosexual relationship between Hathaway and Zeigler was the basis of a state deal for testimony. In light of the narrow ruling of the trial court, we conclude the excluded evidence was not "material in the sense of a crucial, critical, highly significant factor."

## II. THE ALLEGED "DEAL" BETWEEN HATHAWAY AND THE STATE

Petitioner's next argument is that the state failed to reveal a deal it had made with Hathaway. Petitioner contends some time during preparation for the 3.850 motion, a memorandum written by Bill Beardsley, a state prison official, was discovered which requests a transfer for Hathaway and Zeigler. Petitioner argues this memorandum confirms the existence of a deal between Hathaway and the state. Petitioner alleges the state, in violation of due process, failed to reveal to petitioner this memorandum, which petitioner alleges is crucial to proving a deal between Hathaway and the state. Petitioner argues the state was obligated to provide petitioner the memorandum at trial under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).[6] Petitioner contends the argument based on the memorandum is a separate and distinct claim from petitioner's claim that Hathaway's homosexuality was the basis of a deal between Hathaway and the state. And, as petitioner argues, since the district court did not adjudicate this issue, petitioner is entitled to habeas corpus relief or alternatively a new evidentiary hearing. For the reasons that follow, we disagree.

The district court, at its hearing on petitioner's writ of habeas corpus, analyzed the claim at bar in two separate ways. Initially the district court found the petitioner had procedurally defaulted his claim that the state had failed to reveal a deal it had made with Hathaway under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[7] With all due re-

4. *Boykins*, 737 F.2d 1539, 1544 (11th Cir.1984), the case petitioner relies on for the proposition that petitioner's trial was fundamentally unfair, is readily distinguishable. In *Boykins*, the trial court excluded as irrelevant a psychiatrist's testimony related to the defendant's previous history of mental illness where the defendant's sole defense was insanity.

5. Although Demps relies exclusively on a due process argument, we note that limitations on cross-examination can also raise problems under the Sixth Amendment confrontation clause. *See Delaware v. Van Arsdall*, —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Unlike in *Van Arsdall*, Demps was allowed to effectively cross-examine the government's witness as to potential bias. We do not think that Demps' ability to confront the witness was prejudiced by the limitations imposed by the trial court. *See id.* at ——, 106 S.Ct. at 1436 (prejudice inquiry under confrontation clause focuses on the ability to effectively cross-examine the individual witness).

6. The United States Supreme Court in *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), ruled "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Court in *Giglio*, 405 U.S. at 150–55, 92 S.Ct. 763, 31 L.Ed.2d 104, (1972), ruled the prosecution's failure to disclose a promise made to its key witness, that he would not be prosecuted if he testified for the government, violated the due process rights of the accused.

7. In *Wainwright*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Court held respondent, Sykes' failure to raise objections to inculpatory statements either at trial or on appeal barred federal habeas corpus review, absent a showing of cause and prejudice.

spect to the district court, we disagree. As previously mentioned, the record reveals petitioner was allowed the opportunity at trial to attempt to prove his allegations that Hathaway received a transfer in exchange for his testimony. As indicated, this claim was also raised by petitioner on direct appeal to the Florida Supreme Court, *Demps v. State*, 395 So.2d 501, 504 (Fla. 1981), and further when petitioner sought an evidentiary hearing pursuant to Fla.R. Crim.P. 3.850. *Demps v. State*, 416 So.2d 808, 809 (Fla.1982). Under these facts, we cannot agree with the initial analysis made by the district court that petitioner has procedurally defaulted this claim.

However, the district court alternatively assessed the merits of petitioner's argument that the state had made a deal with Hathaway in conjunction with petitioner's argument that the trial court erred in limiting the cross examination of Hathaway. Petitioner argues the Beardsley memorandum coupled with the additional allegations of *Giglio* and *Brady* violations distinguish this argument from the Hathaway cross-examination argument. We do not agree. Both arguments advanced by petitioner are grounded in the impeachment of Hathaway's motive for testifying. Petitioner seems to be attempting to avoid a resolution of the merits of his claim that Hathaway's homosexuality was the basis of a deal with the state by re-phrasing the same claim in terms of a discovery violation, (that the state failed to reveal a deal it had made with Hathaway), in order to revive the initial claim.

█ The record, surprisingly, does not contain Beardsley's memorandum, on which petitioner bases his claim of a state deal with Hathaway. However, during oral argument, counsel for petitioner openly conceded the memorandum, on its face, states the purpose of the transfer was for protection. Counsel further stated that both Beardsley and Hathaway had, at all times, testified the transfer was for protection. Finally, counsel conceded there was no additional testimony concerning the alleged deal between Hathaway and the

state. Petitioner argues nevertheless that the jury should have been aware of the existence of the memorandum. The law is clear that the failure of the government to disclose both to the defense and trial jury the existence of any promises, agreements, and understandings made with key witnesses deprives a defendant due process of law. *Giglio v. United States*, 405 U.S. 150, 153–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 108–09 (1972). Other than petitioner's base assertion, the record reveals, however, that there is nothing to support petitioner's argument that Hathaway received a deal from the state. Petitioner has asserted this claim from the outset of the trial. Petitioner elicited testimony at trial, before the jury, regarding the possibility of a deal between Hathaway and the state. All of the witnesses testified petitioner's transfer to another correctional institution was solely for the purpose of protection. We have no reason to question the veracity of this testimony, especially in light of the fact that Sturgis was apparently killed for being a "snitch." Petitioner's argument that Hathaway received a deal from the state is simply unsupported by the record.

█ Petitioner also contends that the state failed to reveal the memorandum to petitioner in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We disagree. *Brady* and its progeny refer to exculpatory evidence requested by an accused that is suppressed by the prosecution. We decline to hold that Beardsley's memorandum requesting a transfer for Hathaway and Zeigler, for the purpose of protection, forms the basis for a *Brady* claim. Further, the record reveals counsel for the state was unaware of the memorandum.

The district court, at its hearing on petitioner's Writ of Habeas Corpus, heard all the evidence presented by petitioner and concluded petitioner's claims failed to state grounds for habeas relief. We agree. After our own independent review of the record, we find a new evidentiary hearing regarding the Beardsley memorandum would be of no use. *See Morgan v. United*

*States,* 438 F.2d 291, 293 (5th Cir.1971).[8] We affirm the district court with respect to the claims regarding Hathaway.

## III. ALLEGED INTERFERENCE WITH DEFENSE WITNESS SQUIRES

The last argument advanced by petitioner is whether the district court erred in refusing to grant an evidentiary hearing on petitioner's claim that the state substantially interfered with defense witness Michael Squires. Petitioner first raised this issue at his motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850. Petitioner asserted in his motion that Squires did not testify as originally intended because Beardsley offered to have him paroled and transferred in exchange for Squires' refusal to testify on behalf of petitioner. The trial court denied petitioner's motion without a hearing. The Florida Supreme Court remanded the case to the trial court for an evidentiary hearing on petitioner's claim that the state interfered with Squires. *Demps,* 416 So.2d 808 (Fla.1982). The hearing was conducted after approximately eighteen months of extensive preparation. The testimony included that of Squires, Beardsley, Hathaway, and various prison and parole officials. The trial court denied relief finding that the petitioner had failed to prove his claim that the state interfered with Squire's testimony "by any believable evidence." The Florida Supreme Court affirmed the trial court's denial of petitioner's 3.850 motion. *Demps,* 462 So.2d 1074 (Fla.1985). Petitioner filed a writ of habeas corpus motion before the district court alleging state interference with Squires. The district court heard oral argument on the petition and in a lengthy decision denied petitioner relief.

■ Substantial interference with a defense witness's free and unhampered choice to testify violates due process rights of the defendant. *United States v. Goodwin,* 625 F.2d 693, 703 (5th Cir.1980); *United States v. Henricksen,* 564 F.2d 197, 198

(5th Cir.1977). When such a violation of due process rights occurs, a court must reverse the conviction without regard to prejudice to the defendant. *Goodwin,* 625 F.2d at 703; *United States v. Hammond,* 598 F.2d 1008, 1013 (5th Cir.1979).

■ Petitioner's request for a new evidentiary hearing is governed by *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Under *Townsend,* a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances:

1. the merits of the factual dispute were not resolved in the state hearing;

2. the state factual determination is not fairly supported by the record as a whole;

3. the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

4. there is a substantial allegation of newly discovered evidence;

5. the material facts were not adequately developed at the state court hearing; or

6. for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend,* 372 U.S. at 313, 83 S.Ct. at 757; *Collins v. Francis,* 728 F.2d 1322, 1344 (11th Cir.), *cert. denied,* 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984). Petitioner alleges that four of the *Townsend* factors, the first through fourth, mandate a new evidentiary hearing.

■ The first factor to be examined is whether "the state court actually reached and decided the issues of fact tendered by the defendant" to assure the applicant a full and fair hearing. *Townsend,* 372 U.S. at 313–14, 83 S.Ct. at 757. *See Armstead v. Maggio,* 720 F.2d 894, 896 (5th Cir.1983) (citing *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)).

---

**8.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

In the case at bar, the trial court made a brief finding of fact. Additionally, the district court can find material facts implied in the state court opinion where the following two conditions are met: (1) the state court has decided petitioner's constitutional claim on the merits; (2) the state court's view of the facts is plain from the opinion or other indicia. *Id.* 372 U.S. at 314, 83 S.Ct. at 757.

The Florida Supreme Court, on June 24, 1982, remanded to the trial court for an evidentiary hearing on the sole issue of whether "the state through the Department of Corrections, induced a witness, Michael Squires, not to testify." *Demps,* 416 So.2d at 809. The state court held a two-day evidentiary hearing which yielded over three hundred fifty (350) pages of testimony. In its order denying relief, the trial court stated:

> Having heard the testimony of the witnesses and having observed the demeanor of each witness while testifying, and further having examined all exhibits filed in evidence, this [C]ourt, with full and conscious realization of the significance and magnitude of the issues raised herein, finds that the Defendant has failed to prove his claim by any believable evidence.

Petitioner contends the failure of the state court to articulate its standard in disposing of petitioner's claim necessarily mandates a new evidentiary hearing. We disagree. Where the standards utilized by the state court are not articulated, the district court may "properly assume that the state trier of fact applied correct standards of federal law to the facts, in the absence of evidence ... that there is reason to suspect that an incorrect standard was in fact applied." *Townsend,* 372 U.S. at 315, 83 S.Ct. at 758. We conclude the trial court, having held an evidentiary hearing solely directed to the claimed interference by the state, actually reached and decided the material issues of fact raised by petitioner's claim. Credibility is for the fact finder. This record shows that the state judge did not believe that testimony given in support of the claim. We are not free to second guess such a determination. *See Marshall v. Lonberger,* 459 U.S. 422, 432–38, 103 S.Ct. 843, 849–53, 74 L.Ed.2d 646 (1983).

Petitioner further seeks a hearing under the second *Townsend* factor which requires that the court determine whether the state's factual determinations as to petitioner's claim are fairly supported by the record. *Townsend,* 372 U.S. at 316, 83 S.Ct. at 758. The trial court, for two days, heard evidence regarding state interference with Squires. Petitioner alleges Squires' testimony would have contradicted Hathaway's testimony. Squires testified before the trial court at the 3.850 hearing that Hathaway told Squires he was being pressured by a prison investigator into testifying against petitioner and that he was not a witness to the Sturgis homicide. Thus, Squires offered himself as a defense witness, but was induced not to testify due to Bill Beardsley's offer of a transfer to another correctional institution and subsequent parole. The record reveals Squires was in fact transferred and did receive a reduced sentence. The district court found, however, that other than Squires' own testimony, the record does not suggest any improper state interference. Rather, the record reveals that both Squires' transfer and subsequent parole were granted based on Squires' prior cooperation with state agents.

Beardsley testified at the 3.850 hearing that Squires had provided prison authorities with inside information which had incriminated both prison inmates and prison officials. Beardsley acknowledged having discussed a transfer with Squires, but testified the transfer was based upon the danger threatening Squires because of his "snitching." Beardsley, in fact, wrote a memorandum to the Parole Commission requesting a transfer for Squires. Beardsley's memorandum corroborated his testimony, as well as that of other officials at FSP, that both the requested transfer and parole of Squires were prompted by Squires' prior role as prison informant. The record further shows the actual decisions to both transfer Squires and to move

up his presumptive release date were made by various other prison officials based on criteria other than and in addition to Beardsley's recommendation. Classification specialist, Warren Cornell, testified that Squires' treatment was based on Squires' being an informant. Prison inspector-investigator, Paul Sheffield, testified Squires was a "protection case" transferred to avoid personal harm. Parole commissioner, Ken Simmons, testified Squires' sentence reduction was based on "[p]ositive prison adjustment, institutional adjustment, cooperation with the Department or prison people and other law enforcement agencies" and that Beardsley's memorandum was merely one factor in his consideration of the case.

■ The district court found that evidence from the record supported the trial court's conclusion that Squires' veracity was, at best, questionable. We agree.[9] Evidence at the hearing indicated Squires reneged on his claim that Hathaway did not testify truthfully at trial. Squires subsequently admitted under oath that the statement he signed was false. Finally, the record shows, contrary to Squires' testimony, that Hathaway testified he never told Squires he was being pressured by prison officials into testifying against petitioner. After our own independent review of the record, we find the district court's decision that the state did not interfere with defense witness Squires is amply supported by the record; therefore, petitioner is not entitled to a new evidentiary hearing under the second *Townsend* factor.

The third *Townsend* factor to which an issue is raised by petitioner requires a rehearing if the fact-finding procedure employed by the state court did not adequately afford a full and fair hearing. *Townsend*, 372 U.S. at 316, 83 S.Ct. at 758. To mandate a rehearing under this factor, the state court must have made procedural errors "grave enough to deprive the state evidentiary hearing of its adequacy as a means of finally determining facts upon which constitutional rights depend." *Id.* Petitioner claims the trial court's refusal at the hearing to admit the testimony of Squires' girlfriend, Wilda Pascall, was such a "grave" error. At the hearing, Miss Pascall's testimony corroborated Squires' testimony regarding the alleged state interference. Petitioner sought to elicit the testimony on the grounds that Squires had been impeached on cross-examination and

---

**9.** During the 3.850 hearing, the following colloquy took place between counsel for the state and Mr. Squires:

Q. Mr. Squires, in addition to the convictions that you detailed, you have also had, while in prison, disciplinary convictions through administrative procedures for lying and improper conduct associated with lying, haven't you, sir?
A. Not that I recall.
Q. Let me refresh your memory. In 1959, the first year you were in prison, do you remember on January 25th of being convicted in disciplinary court for lying?
A. No, sir. I was a teenager. That is 20 or 30 years ago that you are talking about.
Q. And also let me ask you that, if on the 19th of that same month, you were convicted in administrative court for lying, also, do you remember that?
A. I was convicted of it?
Q. Yes, in administrative court.
A. Convicted of lying?
Q. Yes.
A. I don't recall that.
Q. Okay.
A. I wish you would show it to me.

Q. Mr. Squires—
A. I don't recall ever being convicted of lying....
Q. Mr. Squires, when you gave your deposition on March 1st, 1978, do you recall being under oath in that proceeding?
A. Yes.
Q. You do recall that, do you not?
A. Yes.
Q. One of the first questions that you were asked in that deposition was regarding how you became a witness in this case, a reported witness, and you said that you were next to Harry Mungin, and he asked you to sign an affidavit; is that correct?
A. Are you talking bout what I said in that statement?
Q. Yes.
A. I don't recall exactly. Most of it is predicated on lies and I can't remember my lies.
Squires further testified at the hearing as follows:
Q. So, you lied to your lawyer in February of 1981 ... is that correct?
A. Did I lie to my own lawyer?
Q. Yes.
A. Of course, I did.

that, therefore, the testimony by Squires' girlfriend was admissible as a prior consistent statement. The trial judge denied admission of the proffered testimony finding that Squires had not been impeached on cross-examination and that, therefore, admission of the testimony as a prior consistent statement was not proper.[10] *See Van Gallon v. State*, 50 So.2d 882 (Fla.1951); *Allison v. State*, 162 So.2d 922 (Fla. 1st DCA 1964). On appeal, the Florida Supreme Court affirmed, *Demps*, 462 So.2d 1074, 1075, stating "[t]he general rule regarding prior consistent statements, or bolstering testimony, is that such evidence is inadmissible absent impeachment based on an attempt to show a recent fabrication or other reason for the witness's lack of credibility." (citations omitted). We fail to find a procedural error in the trial court's decision, much less one that undermines the court's ascertainment of the truth. Thus, petitioner has failed to demonstrate a rehearing is required under *Townsend's* third factor.

The final issue the court will address is whether *Townsend's* fourth factor mandates a rehearing. This factor requires a rehearing when petitioner has sufficiently demonstrated the existence of newly discovered evidence "which could not reasonably have been presented to the state trier of facts." *Townsend*, 372 U.S. at 317, 83 S.Ct. at 759. In this case, the newly discovered evidence offered by petitioner is the affidavit of inmate Horace Maddox. Peti-

tioner contends the affidavit would impeach Hathaway by corroborating Squires' testimony that Hathaway admitted having no personal knowledge of the Squires' killing.

The district court found the evidence proffered by petitioner did not offer new information or knowledge not known to petitioner, but was only intended to impeach Hathaway. We agree with the district court. The affidavit does not raise any new claim, it merely corroborates Squires' testimony. Since it does not offer anything in addition to the evidence already proffered by petitioner, we conclude that it is merely cumulative and not "newly discovered evidence" mandating a *Townsend* hearing. The district court acknowledged the assertion that defense counsel exercised due diligence in investigating, gathering and preparing evidence for the hearing on petitioner's motion for post conviction relief. However, the district court held this bare assertion failed to meet *Townsend's* requirement that the evidence "could not reasonably have been presented to the state trier of facts." *Townsend*, 372 U.S. at 317, 83 S.Ct. at 759. Petitioner's request for a rehearing based on *Townsend's* fourth factor is denied.

The district court, having found that petitioner received a full and fair hearing on his claim that the state interfered with the testimony of defense witness Squires, concluded that the presumption of correctness

---

**10.** The ruling of the trial judge, as recorded at the 3.850 hearing, is as follows:

[Counsel for the State]: Now, I am going to object to being hearsay and also self-serving and also bolsters the credibility of their own witness. This is improper under these circumstances.

THE COURT: The objection is sustained.

[Counsel for the Petitioner]: Your Honor, may I make an argument for the record?

THE COURT: Yes, sir.

[Counsel for Petitioner]: Thank you, Your Honor. Under the Florida Evidence Manual of Section 197.3(c) [sic] states that, if a witness has been impeached, that it is proper to rehabilitate the witness to a prior consistent statement.

Your Honor, I would submit that what she is about to testify to would be a prior consist-

ent statement by the Witness Squires and, therefore, would be admissible.

THE COURT: Impeached by whom?

[Counsel for Petitioner]: By the States Attorney through his cross examination of Mr. Squires.

THE COURT: In what respect was he impeached?

[Counsel for Petitioner]: His credibility.

THE COURT: He testified—he is the one that offered it. He is the one that told what an honest person he was, he placed it in evidence, and stated that everything previously said was a lie, and he didn't sway from that on cross examination.

So, if that is the basis for it, the objection is still sustained.

accorded the state court findings necessarily stands. *See* 28 U.S.C. § 2254(d) (1982); *Sumner v. Mata,* 449 U.S. 539, 549, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981); *Jones v. Kemp,* 794 F.2d 1536, 1539 (11th Cir. 1986); *Peek v. Kemp,* 784 F.2d 1479, 1483 (11th Cir.1986) (en banc). Petitioner having failed to overcome the presumption of correctness, is not entitled to relief on his request for habeas corpus.

## CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.