761 So.2d 302 (2000)
Bennie DEMPS, Appellant,
v.
STATE of Florida, Appellee.
Bennie Demps, Petitioner,
v.
Jeb Bush, etc., et al., Respondents.
Nos. SC00-1118, SC00-1179.
Supreme Court of Florida.
June 5, 2000.
Bill Salmon and George F. Schaefer, Gainesville, Florida, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, Florida, for Appellee/Respondents.
*303 PER CURIAM.
Bennie Demps, under his fourth warrant of death, appeals an order of the trial court denying his fourth motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 and also seeks mandamus relief. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the denial of the rule 3.850 motion, and we deny the petition for writ of mandamus.
The present crime involves the stabbing death of an inmate "snitch." When the murder took place, Bennie Demps already was serving two consecutive life sentences and a twenty-year sentence for two other first-degree murders and an attempted murder (he had locked three people in the trunk of a car and shot repeatedly into the trunk). His death sentences for those murders had been reduced to life pursuant to Furman.[1] The facts of the present crime are set forth in this Court's opinion on direct appeal:
On September 6, 1976, personnel at the Florida State Prison discovered inmate Alfred Sturgis in a cell, bleeding profusely from stab wounds. He was rushed first to the hospital at Union Correctional Institute, then to the state prison at Lake Butler. Due to inadequate facilities at both institutions, Sturgis was taken to Shands Teaching Hospital in Gainesville, where he died soon after arrival.
A grand jury indicted inmates Bennie Demps, James Jackson and Harry Mungin for the murder of Alfred Sturgis. In the course of preliminary depositions, defense counsel learned that while en route to the hospital, Sturgis told correctional officer A.V. Rhoden that appellant, Jackson and Mungin had committed the knifing. Rhoden later reduced the statement to writing and included it in a report filed with R.K. Griffis, a Department of Corrections investigator. After defense requests to produce the written document, the state informed the court that Mr. Griffis had misplaced Rhoden's statement. In a pretrial hearing the court refused to dismiss the indictment based on the state's failure to produce Rhoden's report.
At trial Mr. Rhoden explained to the jury what Sturgis had told him in the ambulance:
. . . .
Q Did he say anything else?
A Yes, sir, he said:
"You have to get Mungin and Demps, they held me and Jackson stabbed me."
I asked him, "Which Jackson?"
And he said: "Toothless Jackson."
. . . .
Another witness for the prosecution, fellow inmate Larry Hathaway, testified that while walking past Harry Mungin's cell on the afternoon of the murder, Mungin told him to go downstairs and stay there, because Mungin "was fixing to get rid of a snitch." He followed Mungin's suggestion but returned a short while later, at which time he noticed a struggle going on in the cell in which Sturgis was later found. Mungin was standing in the door of the cell; inside, Hathaway could see appellant holding Sturgis down on the bed while Jackson struck him with downward thrusts. Upon seeing this, Hathaway quickly left the scene.
Demps v. State, 395 So.2d 501, 503-04 (Fla.1981). Demps was convicted of first-degree murder for his role in the crime and was sentenced to death based inter alia on the fact that he had committed two prior first-degree murders.[2] We affirmed. See id. at 506.
*304 The subsequent procedural history is set forth in this Court's opinion addressing Demps' third rule 3.850 motion:
After the governor signed a death warrant, Demps filed a rule 3.850 motion for postconviction relief, which the trial court denied without an evidentiary hearing. This Court remanded for an evidentiary hearing. Demps v. State, 416 So.2d [808] (Fla.1982). The trial court held a hearing and again denied relief. We affirmed. Demps v. State, 462 So.2d 1074 (Fla.1984). Pursuant to a second death warrant, Demps petitioned this Court for a writ of habeas corpus, which we denied. Demps v. Dugger, 514 So.2d 1092 (Fla.1987). We also affirmed the trial court's summary denial of Demps' second motion for rule 3.850 relief. Demps v. State, 515 So.2d 196 (Fla.1987). When Governor Martinez signed a third death warrant in April 1990, Demps filed the current petition for writ of habeas corpus in this Court. This Court granted a stay of execution and Demps filed his third rule 3.850 motion in the trial court, which the court summarily denied. Demps now appeals that denial of 3.850 relief and seeks relief under his pending habeas petition.
Demps v. Dugger, 714 So.2d 365, 366-67 (Fla.1998) (footnotes omitted). We affirmed the denial of his third rule 3.850 motion and denied his second habeas petition. See id. at 368.[3]
Demps on July 2, 1999, filed his fourth (i.e., the present) rule 3.850 motion in circuit court, raising a single main issue. He claimed that he recently (on July 3-5, 1998[4]) discovered a memorandum dated September 7, 1976, written by Chief Prison Inspector and Investigator Cecil Sewell and addressed to Louie Wainwright, then Secretary of the Department of Corrections. The memorandum reads in full:
Inspector Griffis notified this office of the death of Inmate Alfred Sturgis, B/M, # 033044, sentenced to life from Brevard County for escape and murder, 2nd degree. Received in our system 1-14-72. Inmate Sturgis' DOB was 1-12-53.
Subject was housed on "W" wing at FSP, and was stabbed in the chest with a home-made knife approximately 10" long. Inmate Sturgis was sent to UCI outpatient clinic and then to Shands Teaching Hospital, Gainesville. Dr. J. Isaacs, Shands, pronounced him dead at approximately 7:30 p.m., September 6, 1976.
The stabbing occurred at approximately 4:30 p.m., September 6, 1976, and before Sturgis died, he named James Jackson, B/M, # 029667, as his assailant.
The State Attorney's office has been notified and an autopsy has been ordered. The family has also been notified. Inspector Griffis is investigating and will send a complete report when finalized.
Demps claimed that this memo proves he is innocent. The trial court on May 12, 2000, held a hearing to determine if an evidentiary hearing was warranted on this claim and gave the parties until May 18 to supplement the record. The trial court then denied Demps' fourth rule 3.850 motion. Demps appeals, raising several issues.[5] He also has filed in this Court a *305 petition for a writ of mandamus, raising a single issue.[6]
The trial court below concluded as follows in its order denying the present rule 3.850 motion:
10. For the purposes of this Order, the Court accepts, without finding, that the memorandum is newly discovered. Furthermore, the Court finds that it is possible that the memorandum could have been introduced at trial for impeachment purposes. The issue before this Court is whether it is probable that the memorandum, had Defendant discovered it by trial, would produce an acquittal on retrial. See Jones v. State, 709 So.2d 512, 521 (Fla.1998) (citing Jones v. State, 591 So.2d 911, 915 (Fla. 1991)).
11. The Court finds that the memorandum is of little impeachment value as to A.V. Rhoden because it is not clear from what source Sewell derives his assertion that Sturgis named Jackson as his "assailant." It is also not clear why the word "assailant" was used. It could be that it was used only to refer to the person who actually stabbed Sturgis. Furthermore, the use of the word "assailant" by the memorandum's author is not inconsistent with Rhoden's trial testimony... that Sturgis said "You have to get Mungin and Demps, they held me and Jackson stabbed me." Consequently, the possibility that the memorandum would produce an acquittal on retrial is minimal. A minimal possibility does not meet the standard enunciated in Jones and does not provide a basis for this Court to conduct an evidentiary hearing on the motion before it.
12. In addition, the Court finds that if the memorandum had impeachment value as to Rhoden, the availability of prior consistent statements as well as the excited utterances made by Sturgis to both Wilson, Raulerson and possibly others as well as the apparent availability of eye-witness testimony of Hathaway would rebut the impeachment value of the memorandum.
13. Defendant argues that pre-trial possession of the memorandum would have altered the Defendants' joint defense strategy and caused Defendant to use a different strategy. The Court finds this assertion is not justified because of the substantial corroborative and eyewitness testimony available to the state.
. . . .
15. Defendant argues that the memorandum constitutes exculpatory material subject to disclosure by the State and that he was prejudiced by its suppression. For the reasons set forth above, the Court finds that, assuming the memorandum was not disclosed to Defendant, the memorandum could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. See Way v. State, No. SC78640[, 760 So.2d 903] (Fla. April 20, 2000); Thompson v. State, Nos. SC87481, SC88321[, 759 So.2d 650] (Fla. April 13, 2000); State v. Riechmann, Nos. SC98564[SC89564], SC93236[, ___ So.2d ___, 2000 WL 205094] (Fla. March[Feb.] 24, 2000).
Our review of the record shows that the trial court properly applied the law governing this issue and properly concluded *306 that the record affirmatively demonstrates no entitlement to relief whether the issue is addressed as a newly discovered evidence claim or a Brady[7] claim.
Finally, Demps claims that the Sewell memorandum proves that his death sentence is disproportionate and that the trial court erred in ruling otherwise. We disagree. The trial court addressed this issue and ruled as follows:
14. Defendant argues his death sentence was disproportionate to the life sentences imposed upon the co-defendants. The Court finds that this issue is procedurally barred. The Florida Supreme Court determined the issue of proportionality on direct appeal, Demps v. State, 395 So.2d 501 (Fla.1981), and nothing in Defendant's alleged newly-discovered evidence calls into question the previous determination of the relative culpability of Defendant versus his co-defendants.
A trial court's ruling on a pure question of law is subject to de novo review.[8] Our review of the record shows that the trial court properly applied the law governing this issue. We find no error.
We find Demps' remaining rule 3.850 claims and his petition for mandamus relief to be without merit. We affirm the trial court's order denying Demps' fourth rule 3.850 motion, and we deny the petition for writ of mandamus.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). See Anderson v. State, 267 So.2d 8, 10 (Fla.1972).
[2] Codefendants Jackson and Mungin were convicted of first-degree murder and sentenced to life imprisonment (the jury recommended death for Jackson and life for Mungin). Unlike Demps, neither Jackson nor Mungin had been convicted of prior murders.
[3] Demps also sought relief in federal court. See, e.g., Demps v. Dugger, 874 F.2d 1385 (11th Cir.1989) (affirming denial of habeas relief); Demps v. Wainwright, 805 F.2d 1426 (11th Cir.1986) (affirming denial of habeas relief).
[4] Based on this date of discovery, the Sewell memo falls within the one-year time limit of the rule. See, e.g., Mills v. State, 684 So.2d 801, 804-05 (Fla.1996) ("Mills must show ... that the motion was filed within one year of the discovery of evidence upon which avoidance of the time limit was based.").
[5] Demps frames the issues as follows: (1) fundamental denial of due process; (2) denial of due process, prejudicial withholding of exculpatory material, and State's failure to comply with absolute discovery obligation; (3) evidentiary hearing granted, scheduled, and continued; (4) denial of equal protection; (5) denial of fundamental constitutional protections and procedural due process raised to a substantive level; (6) prosecutorial misconduct, denial of due process, equal protection and summary granting of evidentiary hearing; (7) the trial court's denial of a stay and the total disregard of Demps' procedural and substantive rights under Florida law in deference to the executive's scheduled execution date violate Demps' state and federal constitutional rights.
[6] Demps claims that the Governor failed to follow the proper statutory procedure when he set the execution date for 6:00 p.m., June 7, 2000.
[7] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[8] See Philip J. Padovano, Florida Appellate Practice 147 (2nd ed.1997).