[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 18, 2010
JOHN LEY
CLERK

_____

No. 09-12994

_____

D. C. Docket No. 07-00322-CR-T-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN W. GOFF,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 18, 2010)

Before TJOFLAT, CARNES and REAVLEY,* Circuit Judges.

PER CURIAM:

---

*Honorable Thomas M. Reavley, United States Circuit Judge for the Fifth Circuit, sitting by designation.

After a ten-day jury trial, Appellant John W. Goff was convicted on one count of embezzlement of insurance company funds in violation of 18 U.S.C. § 1033(b)(1)(A); twenty three counts of mail fraud in violation of 18 U.S.C. § 1341; and one count of making a false statement to an insurance regulatory agency in violation of 18 U.S.C. § 1033(a). He now appeals his conviction based on five points of error. For the following reasons, we AFFIRM.

## I.

In his first point of error, Goff argues that the evidence presented at trial was insufficient to support his conviction on the counts of mail fraud. Specifically, he contends that the government failed to prove that he intended to defraud XLS when he withheld audit premiums. According to Goff, he lacked the intent to defraud because (1) the PMA arguably allowed him to withhold the payments as offsets against money he believed XLS owed him; (2) XLS knew he was withholding the payments and did nothing; and (3) because no insured was injured by his actions. He further argues that the mailings that formed the basis of the mail fraud counts were contractually required under the PMA and mandated by state law, so they cannot form the basis for mail fraud. The Government counters that the record contains ample evidence of his intent to defraud and that his other arguments are either contrary to law or without any legal authority.

2

We review *de novo* the question of whether the record contains sufficient evidence to support the verdict, "view[ing] the evidence in the light most favorable to the government and resolv[ing] all reasonable inferences and credibility evaluations in favor of the jury's verdict." United States v. Tinoco, 304 F.3d 1088, 1122 (11th Cir. 2002) (internal quotation omitted). "[O]ur sufficiency review requires only that a guilty verdict be reasonable, not inevitable, based on the evidence presented at trial." United States v. Browne, 505 F.3d 1229, 1253 (11th Cir.2007) (internal quotation marks and citation omitted). "[T]he question is whether reasonable minds *could* have found guilt beyond a reasonable doubt, not whether reasonable minds *must* have found guilt beyond a reasonable doubt." United States v. Ellisor, 522 F.3d 1255, 1271 (11th Cir. 2008) (emphasis in original).

There is sufficient evidence in the record from which reasonable minds could have found intent to defraud beyond a reasonable doubt on the mail fraud counts. The jury heard evidence that Goff spent the money he held in trust on his lavish salary and style of living. The Goff Group was in grave financial difficulties, so Goff directed his CFO to start withholding premiums. Moreover, Goff had withheld payments to other companies, Fireman's Fund and Reliance, for which those companies terminated their agreements with him. And, the jury could

3

have found that Goff intended to conceal the breadth of his fraud, because when queried by XLS about when he would remit the audit payments, Goff avoided the question. Any of this evidence alone could lead a reasonable jury to find intent to defraud.

Goff argues that he was merely acting under his good faith belief that under the PMA he could offset the money he believed that XLS owed him. "'Good faith' is a complete defense to a charge that requires intent to defraud." Eleventh Cir. Pat. Jury Instr. 17. The district court properly instructed the jury on the good faith defense. Based on the evidence listed above, a reasonable jury could have found that the evidence did not support Goff's contention that he believed he was allowed to withhold the audit premiums.

Goff also contends that because XLS knew he was withholding premiums, he could not have defrauded them. Alternatively, he argues that there was no fraud, because no policyholder's claim went unpaid thus no person was injured. These arguments are unavailing. The law is clear that a scheme to defraud need not be successful, or even executed to be punishable. United States v. Ross, 131 F.3d 970, 986 (11th Cir. 1997); see also Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991) ("[T]he government can convict a person for mail or wire fraud even if his targeted victim never encountered the deception—or, if he encountered

4

it, was not deceived.").

Goff further argues that because workers' compensation coverage is mandated by state law, under <u>Parr v. United States</u> the mailing of the invoices and premium checks cannot form the basis for mail fraud.[1]  363 U.S. 370, 391, 80 S. Ct. 1171, 1183–84 (1960) ("[W]e think it cannot be said that mailings made or caused to be made under the imperative command of duty imposed by state law are criminal.").  But, in <u>Parr</u> the school district was mandated by state law to mail tax bills to its specific taxpayers.  <u>Id</u>.  Here, state law mandated workers' compensation coverage for all employers, but not that they choose the Goff Group as the provider.  And, several employers testified that had they known Goff was not remitting their payments to XLS, they would not have mailed the payments to him. <u>See also Schmuck v. United States</u>, 489 U.S. 705, 713 n.7, 109 S. Ct. 1443, 1449 n.7 (1989) (internal citation omitted) ("Whereas the mailings of the tax documents in Parr were the direct product of the school district's state constitutional duty to levy taxes . . . and would have been made regardless of the defendants' fraudulent scheme, the mailings in the present case . . . were derivative of Schmuck's scheme . . . and would not have occurred but for that scheme.").  Thus, Goff's mandated

---

[1]  Goff presents his mandated mailing argument as part of his sufficiency argument.  It is better categorized as a legal argument.  But, since it lacks merit from both a legal and sufficiency standpoint, we address it here.

mailing argument fails. Accordingly, we find that reasonable minds could have found sufficient evidence to find Goff guilty on the mail fraud counts beyond a reasonable doubt.

## II.

In his second point of error, Goff challenges the sufficiency of the evidence to support his conviction for embezzlement. Section 1033(b)(1) punishes "[w]hoever acting as . . . agent . . . of any person engaged in the business of insurance . . . willfully embezzles, abstracts, purloins, or misappropriates any of the moneys, funds, premiums, credits, or other property of such person so engaged." 18 U.S.C. § 1033(b)(1). He again presses his good faith argument as a counter to a finding of wilfulness. For the reasons we listed above regarding his first point of error, we find sufficient evidence to support his conviction for embezzlement.

Additionally, Goff argues that because the embezzlement count was predicated on what he characterizes as a contract dispute, it cannot be punishable under criminal law. He tries to make his rejected defense into a novel legal bar to the prosecution. Goff offers no authority for this argument, nor can he. There was sufficient evidence to support Goff's conviction for embezzlement.

## III.

In his third point of error, Goff argues that the indictment against him should

6

have been dismissed because the indictment was improperly sealed and therefore did not toll the statute of limitations and that he was actually prejudiced. Additionally, Goff contends that the district erred when it denied his motion to dismiss the indictment without a hearing.

"This Court reviews a district court's denial of a motion to dismiss the indictment for abuse of discretion." United States v. Palomino Garcia, 606 F.3d 1317, 1322 (11th Cir. 2010). "However, we review *de novo* the district court's interpretation and application of the statute of limitations." Id. (quotation marks and quotation omitted). The timely filing of an indictment tolls the statute of limitations, and a properly sealed indictment "is timely even though the defendant is not arrested and the indictment is not made public until after the end of the statutory limitations period." United States v. Edwards, 777 F.2d 644, 647 (11th Cir. 1985). "Courts have dismissed indictments maintained under seal beyond the limitation period only upon a showing of substantial, irreparable, actual prejudice to the defendants." Id. at 649. Because Goff was not actually prejudiced, we need not examine whether the sealing of the indictment was proper.

Goff argues that he was prejudiced because the delay kept him from securing the testimony of Bill Bergey who died two weeks after the unsealing of the superceding indictment. Goff argues that had Bergey been able to testify, he

7

would have rebutted testimony about the Reliance litigation, thereby disproving the government's pattern and practice argument. He states no specific way in which Bergey would rebut the argument. Nor does he proffer any evidence of how Bergey died and what difference it would have made so that he could have preserved Bergey's testimony had he known of this indictment. Furthermore, whatever Bergey might have testified about Reliance, there was ample other evidence for the jury to find Goff guilty. Goff was not actually prejudiced by failing to secure Bergey's testimony before Bergey's death.

Goff also argues that he was prejudiced because he allowed documents to be destroyed in November of 2007, believing that the statute of limitations had run in October of 2007. Goff has not shown that any prejudice he allegedly suffered was actual, substantial, and irreparable. The Magistrate Judge found that Goff's documents had been produced in several of the previous civil actions surrounding the transactions at issue. Goff has failed to identify any specific documents that he could not replicate from earlier productions. At a minimum, any prejudice would have been reparable, and the district court did not abuse its discretion by not holding a hearing on the matter. Therefore, Goff has not demonstrated that the district court erred in denying his motion to dismiss the indictment based on the statute of limitations.

**IV.**

In his fourth point of error, Goff argues that the application he submitted to the Alabama Department of Insurance is not a "financial document" for the purposes of 18 U.S.C. § 1033(a). The statute does not define either term, so we look to the plain meaning of the words and find that the application for renewal is a financial document. It is "[s]omething tangible on which words . . . are recorded." BLACK'S LAW DICTIONARY 555 (9th ed.). And, the document is financial, because it inquires into matters regarding "the management of money" when it asks if the applicant has had any demands or judgments against it, or been found liable of conversion or misappropriation. Id. at 706. Therefore, Goff's false statement falls within the purview of § 1033(a).

**V.**

In his fifth and final point of error, Goff contends that the Government violated his right to due process when it intimidated one of his witnesses—Thomas Gallion. "Substantial interference with a defense witness's free and unhampered choice to testify violates [the] due process rights of the defendant." Demps v. Wainwright, 805 F.2d 1426, 1433 (11th Cir. 1986); see also Webb v. Texas, 409 U.S. 95, 93 S. Ct. 351 (1972). Here, the Government's suggestion that Gallion be read his rights prior to testifying did not substantially interfere with Gallion's

choice to testify. After the district court, the Government, and Gallion discussed Gallion's possible exposure to criminal charges, during the proffer hearing Gallion testified under oath for the proffer to all of the conduct that could have given rise to criminal charges. We see no interference here. Gallion did not invoke his right to remain silent either at the proffer hearing or the following day when he did not testify. Neither the Government nor the district court engaged in protracted admonitions or unnecessarily strong terms like those in Webb. Accordingly, we find that Goff's due process rights were not violated when the Government asked that Gallion be warned of his rights before testifying.

**AFFIRMED.**